## The President and Fellows of *Middlebury College* vs. *Abraham Williamson.*

That the plaintiffs might accept a subscription paper payable to them when offered, and affirm the agency which was at first voluntary.

That defendant should be admitted to prove that the plaintiffs, by their own act, reduced the amount of subscriptions below *twenty thousand dollars*; that being the *minimum* to attach liability.

That such a reduction of this particular subscription, though not below *twenty ty thousand dollars*, absolves those subscribers, who gave not consent to such reduction.

So does their agreeing to take their pay in land.

That the giving of notes and receiving a discharge, affords no presumption either

way, between a compromise and subscription, unless defendant knew the full grounds of his defence at the time.

That the giving of a note does not preclude defendant from defending by proving such facts as were supposed to exist when he settled, but of which he knew no evidence whatever.

In this action the defence set up, and all the points of law decided by the County Court, on objections to evidence, and in their instructions to the jury, appear in the following exceptions allowed by the Judges of said County Court: "This was an action of assumpsit on a promissory note, dated January 1, 1822, for $90 payable on demand, with interest. Plea, general issue, and trial by jury.

The plaintiffs gave in evidence the note declared on, the making of which by the defendant was admitted. The defence was *want of consideration.*

The defendant produced in evidence the original subscription of himself and many others to the permanent fund of *Middlebury College,* dated in November, A. D. 1815, which is referred to and made a part of this case; and proved that this note was given on account of his subscription, being for one half of the amount of interest to the date of the note. It was admitted that when the subscription was gotten up, the corporation of the *College* were embarrased with debts to the amount of *five thousand dollars,* or more; that their permanent funds applicable to the general expenses of the institution consisted chiefly, if not entirely, of new lands, not productive of any revenue; that they were scarcely able to continue operations upon the plan of education then established, and quite unable to enlarge their plan or increase their expenses ; and that soon after the subscription was filled, they added two professorships and a philosophical apparatus upon the faith of the aforesaid subscription. It was also admitted that the subscription was circulated, and the signatures obtained, by *Dr. Davis,* then president of the *College.*

To show that the subscription was authorized by the corporation, the plaintiffs offered in evidence that article of the bye-laws of the corporation which shews the office and duties of the prudential committee ; the vote of the corporation of August, 1815, appointing the *President of the College,* and *Mr. Chipman,* and

Addison, January, 1828.

*Middlebury Coll.* vs.*Williamson.*

*Mr. Merrill,* the prudential commit-- tee ; the vote passed in 1816, limiting the amount of subscriptions to the permanent fund; the vote of August, 1816, establishing two new professorships ; the vote of August 20, 1818, authorizing the payment of sub-- scriptions to the permanent fund in lands at appraisal, and au-- thorizing the discharge of these subscriptions on payment of one half the amount thereof in money ; the vote of March 2, 1819, relating to the payment of these subscriptions by notes ; the vote of August, 1819, authorizing the prudential committee to set-- tle the subscriptions of *William Slade,* and *William Slade, jun.* ; and the vote of same date, appointing *Mr. Chipman* sole agent to settle and collect these subscriptions ; all which are referred to and made a part of this case : which evidence was objected to by the defendant as improper and insufficient ; but was ad-- mitted and held to be sufficient for the purpose aforesaid. The defendant also contended, that the subscription was not a con-- tract founded upon any legal or sufficient consideration; that the facts admitted as above stated, had no legal tendency to aid or supply any defect of consideration appearing upon the face of the instrument, and because the consideration shewn, if any, was vari-- ant from that alleged in the declaration. But the court decided that the subscription upon the face of it, with the facts admitted, as aforesaid, created an apparent legal liability upon the subscri-- bers in favor of the plaintiffs.

The defendant then offered in evidence the aforesaid vote of August 20, 1818, with evidence to prove that unpaid subscrip-- tions to the amount of *five thousand dollars,* were then known to the corporation to be desperate and wholly uncollectable by reason of the poverty of the signers, so that the amount of sol-- vent subscriptions, when the whole had been reduced by that vote to one half the original amount, would be less than *twenty thou-- sand dollars,* contending that this shewing would operate to dis-- charge the whole subscription. This evidence was objected to by the plaintiffs, and rejected by the court.

The defendant then produced evidence tending to shew, that many of the subscribers were induced by the declarations of *Dr. Davis,* to expect and believe, at the time of subscribing, that the whole amount of their subscriptions would not be required, that probably not more than one half would ever be exacted, and in

some instances, that nothing but ⟨   Addison, January 1828.
the interest for a few years would ⟩ *Middlebury Coll.* vs. *Williamson.*
be expected.   He also offered evidence to show, that the corpo-
ration had discharged part of the solvent subscriptions, not includ-
ing that of the defendant, without requiring payment of any part
thereof.   This evidence was objected to by the plaintiffs but was
admitted by the court.   And it was proved that *Mr. Chipman*,
professing to act under his said appointment of August, 1819, did
execute discharges of several subscriptions against inhabitants of
*Shoreham,* without receiving or stipulating to receive, any pay-
ment.

The defendant also offered evidence to prove that *Dr. Davis* ob-
tained several subscriptions under an engagement on his part, that
the subscribers thus obtained should not be required to pay any
thing, but should be discharged without payment, and that he did
subsequently, and after other signatures were obtained, permit them
to erase their names, or otherwise discharge them, accordingly ;
and that his declared object in so doing was to induce others the
more readily to subscribe while these subscriptions stood upon the
paper.   This evidence was objected to by the plaintiffs on the
following grounds: 1. That the promise of each subscriber was
several and disconnected from that of every other subscriber.
2. That no evidence of this sort relating to any subscription sub-
sequent to that of the defendant could affect his engagement.
3. That no evidence of this kind, relating to any subscription
made after *twenty thousand dollars* had been subscribed, could
affect the subscription of the defendant; his subscription making
part of the first *twenty thousand dollars* subscribed.   But the
court admitted the evidence generally, and without regard to any
of the above distinctions taken by the plaintiffs.   Whereupon the
defendant produced several witnesses, some of whom were and
still are subscribers, to whom the plaintiffs objected as incompe-
tent; but they were admitted by the court ; and the witnesses
thus produced gave evidence tending to prove the above facts in
relation to some four or five subscriptions, all of which were sub-
sequent to that of the defendant, and most, if not all, of which were
subsequent to the sum of *twenty thousand dollars* being subscribed.

The defendant also gave evidence, tending to show, that sub-

sequent to the aforesaid vote of August 20, 1818, the plaintiffs generally claimed of the subscribers but one half of the original amount of the subscriptions and their interest; that whenever they were settled by notes, the notes were taken for that amount, and that in some cases the subscriptions were discharged on payment of half the amount in real estate.    And the defendant contended that if the plaintiffs had relinquished and discharged a part of the subscriptions, they had thereby discharged the whole; and no evidence was given aside from the subscription itself, and declarations of *Dr. Davis* of the character and description first abovementioned, tending to shew any agreement or consent of the subscribers in general, or of the defendant in particular, for any general reduction or abatemement upon the subscriptions.

The plaintiffs then proved that when the note in question was given for one half the amount of interest on the original subscription of the defendant, as aforesaid, another note was also given for one half the principal, and that the subscription was thereby discharged by a competent officer of the corporation.    And they also produced evidence tending to shew, that at, and previous to the giving of said notes, the subscription of the defendant had become the subject of dispute and controversy between him and the plaintiffs; that reports of deception and fraudulent management on the part of *Dr. Davis*, in obtaining subscriptions, were then in circulation to the knowledge of the defendant, and that the notes aforesaid were given by the defendant upon a compromise and settlement of his said subscription, and in consideration of its being discharged.

The Court charged the jury, among other things not material to be repeated, that the declarations of *Dr. Davis*, and the hopes and encouragements held out by him, by which he induced persons to subscribe, did not affect the validity of the subscriptions, if they did not amount to a promise or agreement to let off a subscriber without payment, or to a certain preference in favor of any subscriber, and if they believed from the evidence of his said declarations, and of all the facts and circumstances connected therewith, that he expressed only his honest opinion and belief at the time; but that if they believed that those declarations were

contrary to his opinion and be- $\{$ Addison, January, 1828.

lief, and intended to deceive $\{$ *Middlebury Coll.* vs. *Williamson.* subscribers, they would constitute a *fraud*, and render the subscriptions void—That if the corporation had made a general reduction of all the subscriptions, still leaving the amount of *twenty thousand dollars* or more uncancelled, such act would not discharge the subscribers from payment of the residue, whether such reduction was made with their consent and approbation, or not—that a capricious or needless discharge of any solvent subscriber, without any payment, was an unwarrantable preference, and a *fraud* upon the just expectations of all the others, which would entitle them to refuse payment; but that the act of *Mr. Chipman* in discharging the said *Shoreham subscribers*, was not within the powers of his appointment, and therefore not binding on the corporation—that a compromise of any of the subscriptions, after the same had become the subject of dispute and controversy, would not affect the other subscriptions, though the amount required (being half the original subscriptions,) was received in real estate; provided, such compromise was made in good faith, upon a reasonable necessity, and not intended as a preference—that if they believed from the evidence that *Dr. Davis*, at the time of obtaining the subscriptions, did enter into stipulations which were afterwards executed, with any subscribers, that they should be allowed to take off their names, or should be otherwise discharged, without payment, and that this was done for the purpose of inducing others, from a view of these subscriptions, the more readily or liberally to subscribe, and that any part of the entire subscription as returned to the corporation, was obtained by means of these apparent or unreal subscriptions, they would regard the whole subscription as affected with *fraud*, and not imposing any legal liability upon the defendant when he executed the note in question—that they would probably arrive at this conclusion as the counsel for the plaintiffs seemed to yield this part of the case in argument, but that it was their duty still to examine for themselves.

With reference to the remaining part of the case, the counsel for the defendants requested the court to charge, that if *frauds* were practiced in obtaining subscriptions, which were not known

DD

Addison, January, 1828.

*Middlebury Coll.* vs. *Williamson.*

to the defendant at the time of executing the note, and which would vitiate the subscriptions, his note would not bind him. Thereupon the court charged the jury, that the settlement and discharge of a doubtful demand was a legal and sufficient consideration for a promise—that the subscription of the defendant was a demand of this character, and a proper subject of settlement and compromise—that, therefore, if they found from the evidence that the subscription was, at the time of giving the notes, in controversy between the parties, and that the notes were given in consideration of the subscription being discharged, the plaintiffs were entitled to recover—that there was, however, a material difference between the mere substitution of one security for another, and the settlement of disputes relating to the one by the giving of the other—that in this case, if the design of the parties was merely to substitute the notes for the subscription, and not to settle and put at rest all questions and disputes affecting the subscription, the notes were still open to every objection to which the subscription was exposed, and they would probably find for the defendant—but that the legal presumption arising from the giving of the notes on the one side, and the discharge of the subscription on the other, was, that a settlement was intended, and not a mere substitution of the notes for the subscription; and that this presumption must prevail, unless the defendant had shown, or it otherwise appeared, that the intention of the parties was different—that they would therefore determine, from the whole evidence, whether the notes were given in consideration of the settlement of a controversy, and the discharge of the subscription, or were merely substituted, and to be paid or not as the subscription should or should not be adjudged to be valid— that if the transaction was in fact a compromise, the discovery by the defendant since, of further defence against the subscription, is too late and cannot avail him in this action; and at all events, that such discovery, to be available, must be of some new and distinct ground of defence, and not merely of new or additional facts to support a ground of defence of which the party was before apprised; and therefore, that the discovery of particular frauds, affecting the validity of the subscriptions, cannot now avail the defendant, if at the time of the settlement he knew that such frauds were supposed to exist. The jury returned a verdict for the plaintiffs. And to

the several decisions of the court;  $\{$          Addison, January, 1828.
in admitting evidence on the part  $\}$ *Middlebury Coll.* vs. *Williamson.*
of the plaintiffs, and upon the effect and sufficiency thereof, and
rejecting evidence on the part of the defendant, and to the charge
aforesaid, the defendants except.     Exceptions allowed and sign-
ed in court, the 6th day of Oct. A. D. 1826—And by order of
court, the questions of law arising on the trial aforesaid, pass to
the Supreme Court for a final decision thereon."

The subscription-paper, and votes of the corporation, referred
to in these exceptions, are the same as are cited in the case
against the *Admrs. of Freedom Loomis'** and need not be here
recited. And the arguments of counsel applicable to this case
and not to the other, are in substance, as follows:

*For the defendants.*

It appears in the case, that the note was given for one half of
the subscription, and the whole subscription thereupon discharg-
ed. It appears further, that the "plaintiffs produced evidence
tending to shew, that at, and previous to, the giving of said note,
the subscription of the defendant had been the subject of contro-
versy between him and the plaintiffs; that reports of deception
and fraudulent management, on the part of *Dr. Davis* in obtaining
subscriptions, were then in circulation to the knowledge of the de-
fendant; and that the notes aforesaid were given by the defendant
upon a compromise and settlement of his said subscription, and in
consideration of its being discharged." By the defendant's evi-
dence it also appears, that *Dr. Davis* obtained several subscrip-
tions, which, at the time, he promised to discharge; and having
made use of these subscriptions to induce others to sign, did actual-
ly allow the subscribers to erase their names, and did otherwise
discharge them. In another part of the case it appears, that previ-
ous to this, in August, 1818, the corporation had passed a vote
" authorizing the discharge of these subscriptions on payment of
one half the amount in money," and " that subsequent to the a-
foresaid vote of Aug. 20, 1818, the plaintiffs generally claimed of
the subscribers but one half; and that whenever they were settled
by notes, the notes were taken for that amount." Upon these facts
the judge charged the jury, "That the settlement and discharge of a
doubtful demand, was a legal and sufficient consideration for a prom-

* See the last preceding case.

Addison, January, 1828.  } ise, and that the subscription of the
*Middlebury Coll.* vs. *Williamson.* } defendant was a demand of this
character, and a proper subject of compromise." And also "that
the legal presumption arising from the giving of the notes on the one
side, and the discharging the subscription on the other, was, that a
settlement was intended, and not a mere substitution of the note
for the subscription, and that this presumption must prevail, unless
the defendant had shewn, or it otherwise appeared, the intention
of the parties was different;" and also, "that if the transaction
was in fact a compromise, the discovery by the defendant since
of further defence against the subscriptions is too late, and can-
not avail him in this action; and that at all events, such discovery,
to be available, must be of some new and distinct ground of de-
fence, and not merely of new and additional facts to support a
ground of defence of which the party was before apprised; and
that, therefore, the discovery of particular frauds, affecting the
validity of the subscriptions, cannot now avail the defendant, if at
the time of the settlement he knew that such frauds were suppo-
sed to exist."

1. The Judge was incorrect in charging the jury generally that
a discharge of a *doubtful demand,* like this, was a good con-
sideration for a promise. No one is, or can be presumed to be,
ignorant or doubtful about the law. How doubtful must it be?
And how shall it be proved that either party did *not* know the law?
Is it sufficient that a man makes a demand upon another, and in-
sists that it is legal, and at length takes a note for half the claim?
Or when a man does thus insist, at what point short of a legal
claim, shall the demand be said to be doubtful, and constitute
a good consideration? If the Judge meant a case where the
parties are in doubt about facts which have not happened, or are
unknown to either of them, he should have been more partic-
ular in his language, and should also have left it to the jury to
find whether such was the fact in this case, and not have told
them it "was a demand of this character." In this case, the plain-
tiffs had always contended the subscription was legally binding.
They had also always contended that a fraudulent procurement
and discharge of part of the subscriptions did not discharge the
rest. Still, it is believed, that these pretensions of theirs did not

alter the character of the claim.---

If it was not a legal claim, it was nothing. Not even a consideration for a promise.

2. The defendant also contends, that although at the time of the settlement he knew that "frauds were supposed to exist," yet he did not know that facts of a fraudulent character sufficient to avoid the subscription, actually existed, and were capable of proof, which were afterwards *discovered*. And the Judge was manifestly wrong in charging, that he could not avail himself of "particular frauds," afterwards *discovered*, on account of a *supposition* that they existed when he signed the note, even if the jury understood him to refer to what *Williamson* supposed, which is by no means certain. It was suspected and *supposed* by many, that these subscriptions were fraudulently procured long before any actual proof of the fact became publick. The judge also charged, that if the defendant was apprised of any particular ground of defence at the time of the compromise, he could not avail himself of any accumulation of knowledge upon that point afterwards. Now the defendant might know of a single fact : but he might neither know, nor have the means of knowing, at the time, of any other, and he might well believe this one would not convince a court or jury that there was fraud. Afterwards he might discover twenty other facts of the same kind which would be perfectly conclusive. On these points, the principles laid down by the judge were more favorable to a fraudulent party than is warranted by any precedent. It is believed to be a correct principle, and one which ought to have been applied in this case, that whenever a party has been defrauded, no new promise or compromise will bind him, unless he has, at the time of making it, a knowledge of the facts in which the fraud consists, sufficient to constitute his defence, or, at least, the means of knowing the same by common vigilance : and the Judge ought so to have charged the jury.

3. The Judge was wrong in charging, that a legal presumption of a compromise, sufficient to throw the burthen of proving the contrary on the defendant, would arise from giving the note and receiving a discharge. It was *prima facie* sufficient for the defendant to shew that the note was given for the subscription, and that the subscription was void. If there was a compromise,

the plaintiffs should; have shown it affirmatively. It would be as difficult for the defendant to prove a negative in this as in any other case. Suppose a witness had stood by and seen the note and discharge' given, and heard nothing of a compromise : still it might have been urged that the arrangement had been before made, and the parties were then only carrying it into effect. Long before the notes were given, the corporation had unconditionally discharged one half, and claimed no more of any subscriber than his note for one half. This *Williamson* gave. Every presumption, therefore, was against this notion of a compromise ; and it should not have been presumed, but proved, that *Williamson* settled in a different manner from others, and from what the corporation required.

4. *Mr. Chipman's* authority was to *settle*, not compromise, with subscribers, at his discretion. A *settlement* includes any disposition of a demand, even to a discharge ; and no doubt the corporation intended to give him full powers. They had an interest in getting rid of the influence of some subscribers from whom they expected resistance and trouble, and probably intended they should be discharged. They never have called on those he discharged, or disavowed his acts or authority. The Judge was, therefore, incorrect in charging that he exceeded his authority.

*For the plaintiffs, it was contended*, That a promissory note, given by way of compromise of a doubtful claim, is binding upon the maker.——1 *Dane*, 125.——2 *Com. Dig.* 334——That the plaintiffs' claim against the defendant was a fit subject of compromise, and that the fact that the note was given with that view, is found by the jury——and that whenever a party does compromise a disputed claim, he waves every defence which may exist.

It was further insisted, that when a party pays money, or gives a note, with full knowledge or means of knowledge, of all the facts, he cannot afterwards resort to any defence which was properly a defence to the original claim——that it was proved the defendant in this case knew that the subscription was resisted, and upon what grounds it was so. He therefore, had his election, either to examine the evidence and resist the claim, or to settle it——that having done so, it was not competent for him to litigate it, upon the ground that new or

additional evidence has come to his $\Big\{$     Addison, January, 1828.

knowledge since the compromise $\Big)$ *Middlebury Coll.* vs. *Williamson.*
—that the burthen of proof was on him, in this respect, and that it would be going too far to require the plaintiffs to prove a knowledge in the defendant of all the *minutiæ* of evidence which might be brought into such a case.

HUTCHINSON J. delivered the opinion of the court. This action is brought upon a note which the defendant acknowledges that he signed. And it appears by the case that this note was given for half the interest purporting to be due from the defendant, as having accrued upon the whole sum subscribed by the defendant to the permanent fund of the *College,* and contained in the subscription-paper referred to in the case. The defence set up requires the court to decide, first, whether the contract contained in said subscription, and standing in connection with the several votes and proceedings of the corporation, was binding upon the defendant? and secondly, whether the County Court gave proper instructions to the jury, with regard to the defendant's right to make the same defence to the note, which he might have made to a suit brought directly upon the subscription?

Under the first point it is urged that the plaintiffs can take no benefit from this contract, nor be treated as parties to the same; because, it appears from the case that the subscription-paper, in its present form, was carried about by *Dr. Davis,* then president of the *College* with a request by him made to those friendly to the cause of literature, and to that institution in particular, that they would subscribe thereto such sums as they were willing to contribute for the object therein named; and for aught that appears, *President Davis* acted upon his own responsibility, and without any authority whatever from the plaintiffs to make such a contract. This is urged upon a correct principle, if it were applicable to the case, and it truly does not appear that any authority was originally given *President Davis* on this subject. But the plaintiffs may accept an agency performed for their benefit, and accept a contract made to them, when it is offered, and thenceforward it becomes binding. And the defendant, and others, signing this subscription, while in possession of *President Davis,* may be considered as authorising him to deliver it as their contract to the plaintiffs to whom it was made payable. It was so

delivered; and the corporation have so long, and by such repeated corporate acts, recognized it as made for their benefit, we are disposed to consider the proceedings of *Dr. Davis*, the same as if the corporation had sent him out upon the business by an express vote.

It is further urged that the County Court erred in rejecting the testimony offered by the defendant to show the reduction of the subscription by vote of the corporation. It appears from the case that the defendant offered to prove that in August, 1818, unpaid subscriptions to the amount of *five thousand dollars* were wholly uncollectable by reason of the poverty of the signers; that this was then known to the plaintiffs; and that they then, by their vote, discharged one half of each subscription; all which reduced the available subscriptions to an amount less than *twenty thousand dollars.* This testimony was rejected; and we think, improperly rejected. One important condition of that subscription was, that none were to be holden, unless the amount subscribed should be *twenty thousand dollars.* This must be intended to mean fair subscriptions, such as may probably be collected. If any of them become unavailing afterwards, without the fault of the plaintiffs, that would not affect the binding force of the contract with regard to such as remained solvent. But if the plaintiffs, by their own act, reduce the available subscriptions below *twenty thousand dollars*, and that without the consent of the solvent subscribers, they become as they would be, had that sum never been subscribed. The object of the subscribers was to raise a sufficient permanent fund to relieve the wants of the *College.* They would not contribute unless the object could be accomplished. And they fixed upon the sum of *twenty thousand dollars*, as the *minimum.* They were desirous it should be greater; but they would not be holden, if it were less. Now to admit the plaintiffs, by their own act solely, to reduce a subscription, that would meet the desired object, so low as to defeat that object, and then collect any portion from the solvent subscribers, would operate as injuriously to them as to collect before the sum had ever amounted to *twenty thousand dollars.*

Closely connected with this, is that part of the charge which

instructs the jury that a general ⎰　Addison, January, 1828.
reduction of all the subscriptions, ⎱ *Middlebury Coll.* vs. *Williamson.*
and leaving *twenty thousand dollars* uncancelled, would not discharge the subscribers from paying the residue, though this reduction were without their consent.　By this instruction, the attention of the court is drawn to the general character of the subscription, with its several conditions, as noticed in the suit against the administrators of *Loomis.*　If the views we have just taken in that case be correct, the subscription returned to the corporation is an entire contract.　Not that any subscriber is holden for any but his own subscription ; but the several conditions annexed to the subscription give each subscriber a right to have the whole amount secured and collected, without any diminution resulting from the doings of the corporation.　Not only has each subscriber a right to be treated as well as any other subscriber, but he has a right that all the amount raised shall be collected and appropriated according to the terms of the contract ; and has a further claim to be relieved, in the amount of his own subscription, by any surplus amount alluded to in the last condition of the writing itself. The corporation had, therefore, no right to reduce the subscription without the consent and agreement of the subscribers, against whom they would still assert a claim.　This part of the charge, resting upon undisputed facts, we deem incorrect.

The defendant further contends, that there never was any consideration for the contract contained in the subscription, and that nothing has been done by the plaintiffs on the credit of it which amounts to a consideration ; but their discharging by their vote, on receiving pay in land, or one half in money or notes, defeats all pretension of their having created a consideration by acting on the faith of the subscription.　This point, striking at the root of any action upon the original contract, has been ably argued by the counsel on both sides, and all the authorities adduced that can be found bearing at all upon the subject.　Some of these authorities are claimed as favorable to both the parties.

Cases cited by the plaintiffs—11 *Mass. Rep.* 113, *The Trustees of Limerick Academy* vs. *Davis.*　This was a subscription to erect an academy, before any act of incorporation, and the suit brought by the Trustees after the act of incorporation.　The de-

EE

fence set up was, that the plaintiffs were not payees of the contract; and secondly, that the contract was voluntary and without consideration. The court got over the first objection by saying that, no promisees being named in the written contract, but the object defined, the act of incorporation supplied that defect by appointing the plaintiffs trustees to give effect to that object. Upon the other point, the want of consideration, the court said, the defence was base and dishonorable, but was available at law.

Also, 12 *Mass. Rep.* 190, *Larkin* vs. *Dana.* This was a subscription to support a newspaper. The action was sustained, not upon the contract, as such, but upon a count for money laid out and expended by the plaintiff, at the defendant's request; the plaintiff having actually expended the money on the faith of the subscription.

Also, 14 *Mass. Rep.* 172, *The Trustees of Farmington Academy* vs. *Allen.*—The defendant subscribed a sum to help found an Academy. He paid part of it, and excused the non payment of the residue, when called upon, by naming his poverty. And the amount was actually expended before the suit was brought. The plaintiffs recovered on a general count for money laid out and expended ; the court considering that the part payment amounted to an authority for the plaintiffs to expend the remainder on the credit of the subscription.

Also, 5 *Mass. Rep.* 80, *Worcester Turnpike Co.* vs. *Willard*— 6 *Id.* 40, *Andover and Medford Turnpike Co.* vs. *Gould.* These actions were brought upon contracts to pay the assessments upon the shares for which they subscribed ; and the plaintiffs recovered.

We may as well notice at this time, that the defendants by their subscription became owners of the stock, and had an interest in having the roads made, which would be for their benefit when made. In this they differ from the other cases cited; where the money was intended solely for a public use.

The plaintiffs also cite 7 *Johns. Rep.* 112, *The Religious Society of Whitesboro'* vs. *Stone.* This was upon a written promise to pay for preaching, so much annually, for five years. Suit brought to recover one or more of the annual payments. A recovery was had. From the terms of this contract, the preaching

was to be performed before the  ⎰    Addison, January, 1828.
payments became due.             ⎱  *Middlebury Coll.* vs. *Williamson.*

Also, 20 *Johns. Rep.* 89, *McCauly* vs. *Bellinger, et al.*  A subscription to repair a church, at four equal instalments, provided sufficient be raised to do the whole repairs : sufficient was subscribed, and the defendant was holden liable.

The defendant's counsel, cite 3 *T. R.* 653, *Cook* vs. *Oxley—the tobacco case.*  Contract for one to sell, and the other to buy, and notice to be given by four o'clock in the afternoon.  The plaintiff complied ; but failed in his action for want of consideration for the promise, and want of mutuality.  Judgment was arrested after verdict.

Also, 12 *Johns. Rep.* 190, *Tucker* vs. *Woods;* where A, in writing, promised to sell a house, a tan-yard, &c. on specific terms, and at a stated price, and give possession at such a day named, and the contract to be binding till the first of January, then next.  This was holden to be a proposal, and not a binding contract ; and the defendant had judgment.

Also, 16 *Johns. Rep.* 47, *Jackson* vs. *Lawrence.*  In this it was decided, that a deed with no consideration, except the grantee's supporting the grantor, was void for want of consideration.  To show a want of mutuality to aid consideration, and that the plaintiffs have never, by any act, bound themselves to receive, and take care of, the fund subscribed, the defendant cites 8 *Mass. Rep.* 292, *Essex Turnpike Co.* vs. *Collins,* where it was decided that no action lies to recover upon the contract, therein stated, to take shares and pay assessments ; the court saying the corporation could not act but by vote.

Also, 1 *Saund.* 264, *Osburn* vs. *Rogers*—That a request, actual or implied, must be proved.

Also, 9 *Mass. Rep.* 254, *Boutell et al* vs. *Codwin*—An action upon a note given to the deacons of the church, naming them, and their successors in office—Decided that the note was void for want of consideration.

As a preliminary remark upon the legal force of this subscription, under all the circumstances presented in the case, we observe, that the subscription paper itself describes no consideration in form for the promise to pay the principal sum.  With regard

Addison, January, 1828.

Middlebury Coll. vs. Williamson.

to the interest, it recites, for the consideration aforesaid, they promise to pay said interest annually. That is, by reference back, in consideration of the wants of the *College*, and promoting the object of a permanent fund, &c. And further, that none of the authorities cited for the plaintiffs, are exactly in point to support the action on the subscription without the aid of the circumstances presented in the case, that the plaintiffs, on the credit of this subscription, created two new professorships, appointed their professors, and procured a philosophical apparatus, and proceeded in their care of the institution upon a more enlarged scale than would have been prudent, or at all practicable, without this fund upon which they in fact relied. Perhaps, the case shows less than was in the power of the plaintiffs to prove on this point. It shows nothing about the sums expended by the new professorships, or the purchase of the apparatus, nor whether the professors elect accepted the appointment. One of them at least, never entered upon the duties, nor resided at the *College*. On any future occasion these matters may be made to appear more fully, if either party desire it. But it does appear that the corporation, by their several votes, agreed, and authorized their agents, to receive lands on the subscriptions ; also to receive one half in money and the interest, and discharge the whole ; also to receive notes for that half and discharge the whole. Now, we are well agreed that this proceeding lets off every subscriber who did not choose to settle his subscription in this way. The real and declared object of the subscription was to raise a sufficient permanent fund to support the *College*. This, to be effective, must be in money. It was contracted to be in money. The receiving the amount in land, or receiving the half in money, or receiving that half in notes, and risking a loss in their final collection, was wholly destroying that fund ; wholly destroying that sufficiency and permanency which might well have formed the prevailing motive in the minds of the subscribers, at the time they gave the measure of their liberality by signing their names.*

* HUTCHINSON, J. was of opinion that no action could be supported upon this subscription for want of consideration. That it amounts to no request to expend money on the credit of it. Indeed, nothing but the interest could ever be expended. Justice TURNER inclined the other way ; if the plaintiffs had kept their hold upon the subscription. But both were agreed in the position above established.

There is a view of this subject ⎧　　Addison, January, 1828.
that has not been mentioned by ⎭ *Middlebury Coll.* vs. *Williamson.*
the counsel, and has no weight in our present decisions ; yet should
be named, that the counsel may examine it against any future
trial upon any of these causes.　　The subscription is rather intri-
cate in some of its parts.　　It purports to contemplate the raising
a fund of *twenty thousand dollars,* and more, if it should succeed
as desired, and contains a stipulation, that if the plaintiffs should
after the date, and before day of payment, receive by donation or
otherwise, above the debts then, and that might after become, due
from the plaintiffs for erecting a *College,* &c. a sum equal to the
whole amount of the sums thereto subscribed, the plaintiffs should
refund the sums paid on the subscription ; and on the receipt of
a less amount, there should be a discharge for a sum to each in
proportion.　　Vague as this is, it must receive a construction.　　If
that construction should be, that if the subscription should swell
ever so large, the subscribers would receive no full discharge till
other monies equalled all this, besides paying all the debts due
from the corporation, this condition would afford poor encourage-
ment for people to enlarge the subscription ; for the larger it should
be, the less probability of their ever realizing a full relief : and
yet it seems probable that this condition was inserted to encour-
age subscriptions.　　If we should say that the expression, " the
whole amount subscribed to this contract," means the sum of *twen-
ty thousand dollars* therein named as the smallest whole sum
which would give it binding force, another difficulty arises.　　The
subscriptions bear interest from January 1, 1816, and probably
the return was made by about that time to the corporation.　　Af-
terwards, on the 15th of April, 1816, the corporation, discovering
the uncertainty apparent as above noticed, voted that the sum of
*fifty thousand dollars* should be the ultimatum, beyond which the
subscribers should not be holden to the corporation ; and that all
beyond that should be applied to reduce the subscriptions.　　Now,
if it should be decided that the subscribers might well understand
that all beyond the first *twenty thousand dollars* was to operate
for the relief of those who subscribed that sum, the vote of April,
1816, affixing *fifty thousand dollars,* would be virtually refusing to
accept the subscription, without attaching new conditions to which

Addison, January, 1828.

*Middlebury Coll.* vs. *Williamson.*

the signers never agreed. This may be examined by counsel against a future trial. It has no effect upon our present decision. Upon the other grounds we decide that this action could not be maintained, had it been brought directly upon the original subscription, and no note had been given, and the statement of facts just as now are before the court.

We proceed, secondly, to notice the instructions given to the jury by the County Court, relative to the effect of the defendant's giving the note in question. The court, after noticing a distinction between giving a note to compromise a disputed claim, and merely substituting a note for other evidence of a pre-existing contract, observe that " the legal presumption arising from the giving of the notes on the one side, and the discharge of the subscription on the other, was, that a settlement was *intended*, and not a mere substitution of the notes for the subscription ; and that this presumption must prevail, unless the defendant had shown, or it otherwise appeared, that the intention of the parties was different."

We consider this part of the charge incorrect. The mode of doing the business affords no presumption either way, as we can discover. It is the ordinary way of doing business, and equally so, whether the parties intended a substitution or a compromise. The person giving the notes, either way, would want a discharge from the old claim, and the person receiving the notes would be willing to give such discharge. The presumption could not be as stated in the charge, without the additional fact, that the defendant, when he gave the notes, knew of the grounds of the defence to the subscription which he has now established by testimony.

The court further instructed the jury, that if the transaction were in fact a compromise, the discovery of a further defence to the action comes too late to avail the defendant ; and that, at all events, the new discovery must be of new and distinct grounds of defence, not merely cumulative testimony ; and that the discovery of particular frauds affecting the validity of the subscription cannot now avail the defendant, if he knew at the time of the settlement that such frauds were supposed to exist.

The case recites nothing which shows what knowledge the defendant had of the grounds of his defence, when he gave the

Addison, January, 1828. } notes; of course, it cannot now be
*Middlebury Coll.* vs. *Williamson.* } accurately ascertained whether the
charge in that particular was applicable to the case. But the last
clause recited seems exceptionable. If the defendant has now
proved particular frauds affecting the validity; this cannot avail
him if he then knew that such frauds were *supposed* to exist. Now,
he might have supposed that such frauds existed, and might have
been so informed that he fully believed it, and yet not be able to
prove it, nor even know any testimony tending to prove it. He
has now discovered full proof. This is not of a cumulative char-
acter; if such were its nature, the charge, in the last clause but
one, would be correct. Cumulative testimony, strictly speaking,
is that which adds to the weight of testimony upon a point litiga-
ted. For instance, if the defence set up was a particular ground
of fraud in obtaining the subscription, and all the discovery made
after the note was given was additional testimony to prove that
particular ground of fraud, this would be cumulative; but if the
new discovery comprehend another and distinct fraud, forming
a defence of itself, this could not be termed cumulative. And
such matter, not known at the time, would not be waived by the
giving of the note. It seems probable, from the case, that the sub-
scription was considered good and valid, in point of its considera-
tion, during the whole settlement. And when we consider that
the County Court, on the trial of the action against *the admrs. of
Loomis,* admitted the subscription as valid in this respect, though
objected to, it would be too much to say that when the defendant
gave this note, he so understood his rights, so well knew that the
subscription was void for want of consideration, that he cannot
now be permitted to set up such want of consideration as a de-
fence to the note. That defect in the subscription, furnishing a
defence to the same, is attended with so much intricacy, it cannot
be expected that a man unlearned in the law can judge of it so
as to be said to know it, and impliedly waive the objection by a
settlement. In most of the cases, where an indorser of a note
promises to pay the holder, and yet is adjudged not liable on his
promise on account of his ignorance of the circumstances when he
made the promise, he had some knowledge; he knew when notice
came back to him of the non-payment by the maker or drawee,

Addison, January, 1828.

*Middlebury Coll.* vs. *Williamson.*

} but he, not knowing the connected circumstances, and the law applicable to the same, is admitted to set up the same defence when sued upon his promise, which he might set up when sued upon his legal liability as indorser.   How it would appear, in respect to the defendant's knowledge, if the testimony upon this point had been recited, we cannot say.   But it was incorrect to exclude the defendant by reason of his knowing merely that frauds were supposed to exist.   A new trial is granted.

*Starr* and *Phelps*, for plaintiffs.

*Bates*, for defendant.