SOLOMON J. DEWEY *v.* ARCHIBALD DEWEY.

[IN CHANCERY.]

*Partnership.   Trust.   Chancery.*

The orator and defendant being partners, land was purchased for the partnership use, and with the expectation that it would be paid for by the firm, but, without the orator's knowledge, the defendant took the conveyance to himself alone, and gave his note for the price, which, however, was paid by him out of the partnership funds. Immediately upon the conveyance, the firm took possession of the land, and regarded and used it as partnership property for twenty-six years. *Held,* that the defendant held the title only as trustee for the firm, and he was decreed to so convey the land as to vest the title in the same manner as if it had been originally conveyed to the firm.

BILL IN CHANCERY. The facts in the case sufficiently appear from the opinion of the court.

The chancellor, KELLOGG, J., dismissed the bill with costs to the defendant, from which decree the orator appealed.

*Z. Howe* and *E. J. Phelps,* for the orator.

*E. Edgerton,* for the defendant.

POLAND, CH. J. The orator and defendant are brothers, and in 1828 they commenced the business of farming, as partners, and continued it down to 1857, when they separated. In 1831 the parcel of land in dispute was purchased, and, from that time down to the termination of the partnership, was used for the partnership business, like the lands they owned jointly. When it was purchased, however, the conveyance was to the defendant alone, and he executed his note for the purchase money, though it is conceded that the note was paid with money that come from the partnership fund. The orator alleges in his bill, that the land was purchased by the mutual understanding and agreement of the parties; that it was for the partnership; that it was paid for out of the partnership funds, but that the defendant without his knowledge or consent took the conveyance to himself; that the land went immediately into the use of the partnership, and

that he did not know for a long time that the conveyance was to the defendant alone.

The orator prays that the defendant may be decreed to convey to him one undivided half of the land.

The defendant in his answer asserts that he purchased the land for himself, without any communication or concurrence with the orator, and with no design that it should be for the use or benefit of the partnership, and gave his own note for the purchase price ; that when the note fell due the partnership owed him for money advanced for the partnership use, which he withdrew for the purpose of paying the note, and that this was known and assented to by the orator.

The defendant concedes that the land went immediately into the use of the partnership, and continued to be used by them so long as the partnership existed, but this, he alleges, was done upon a special contract between him and the orator, by which the orator was to pay one-half the rents and taxes, and account to him for one-half the interest of the purchase money.

The decision of the case depends mainly upon the proper determination, on the evidence, which of these conflicting statements is the truth.

The orator testifies in substance according to the allegations in his bill, and denies what is alleged by the defendant, as to any agreement or understanding that the defendant might withdraw funds from the partnership as his own to pay the note given for the land, and also denies that the land went into the partnership use under any such contract as the defendant sets up.

The defendant testifies in substance to the same facts as he sets up in his answer, and contradicts the testimony of the plaintiff, as to the matters in dispute, very much as his answer denies the allegations in the bill.

Each is corroborated to some extent, and about equally, by the testimony of other witnesses, so that if nothing could be drawn in favor of either from the general history of their transactions, the testimony is so nearly equal as to make it very difficult to find the balance.

But the fact that this land, immediately upon its purchase, went into the use of the firm, for partnership purposes, and so

continued for nearly thirty years, unless satisfactorily explained upon some other theory, must have a very controlling influence, to show that it was bought for that purpose.

The defendant attempts to explain this upon the ground that this occupancy was under a special contract between him and the orator, that the orator should pay half the rents and taxes, and account to him for the interest on one-half the purchase money. If this is established by the proof, it affords a satisfactory explanation of the joint use, consistent with the land remaining the sole property of the defendant. The only witnesses are the two parties. The defendant says there was such a contract; the orator denies it. The fact that the orator paid half the rents and taxes affords no support to the existence of such a contract, because such payments are equally consistent with its being treated as the property of the firm, as in such case they would be paid in the same way.

But what effectually disproves, to our satisfaction, the existence of any such contract, is this : the entire failure of the defendant to prove, or even claim, that the orator ever accounted to him for the interest on one-half the purchase money of the land, as he claims he was to do by the agreement, and as he should in justice have done, if the land was the private property of the defendant, and paid for out of his own private funds. This fact has increased force, when considered in connection with what both agree to have been their practice, to close up and even off their joint dealings, and divide the avails every year. It is certainly hard to believe that the defendant would allow the orator to have one-half the use and benefit of this land for so long a period of time, if it was his sole property.

The long continued use of this land by the partnership, for partnership purposes, is therefore left to have its full effect toward the establishment of what the orator alleges ; that it was bought for the purpose, and paid for by the firm, and we regard it as quite controlling for that purpose.

The defendant concedes that when the note was finally paid, that he gave for the land, it was paid out of money that belonged to the firm, but claims that the firm were indebted to him, and

that he took the money out as payment of his debt against the firm, so that it became his private funds.

But all this is denied by the orator, and as the burden of proof as to this fact we think is on the defendant, we can not regard it as proved, and what has already been said shows the improbability that the payment for this land was regarded as a payment by him. We find the facts, therefore, substantially as claimed by the orator, that when this land was bought, it was bought for the partnership use, and with the expectation that it would be paid for by the firm; that when it was paid for, it was paid in partnership funds, as such, and that it was ever after regarded and used as partnership property, during the existence of the firm.

This result of our finding of the facts, relieves the case from the necessity of considering many of the legal points discussed in the argument. The argument for the defendant that the claim of the orator must stand on the ground of a resulting trust, and that such trust could not be raised in this case, has all been based upon the supposition that the defendant, when he made the purchase, and took the conveyance, made it for himself, and for his own use, and that the subsequent payment of his note by partnership funds, would not raise a trust, because that must arise at the time of the conveyance. But as we find that when the defendant made the purchase, and took the conveyance, he was acting for the firm, and as a partner, it brings the case within the common doctrine of agency, as partners, acting in the partnership business, always act as agents for the firm. If the defendant, in taking the conveyance to himself, really intended to defraud the firm, or his partner, then there could be no doubt as to the right of the firm to claim the benefit of the purchase. But we do not regard it as at all essential that he should have intended any fraud, in order to make the property in equity that of the firm, and we are of opinion that partners, who in all matters affecting their joint interest, stand in a fiduciary relation to each other, are to be regarded in a very different light from parties who deal with each other as mere strangers.

The well established rule in this country in equity is, that

real estate bought for partnership purposes, and on partnership account, is regarded as becoming a part of the partnership stock, and will be dealt with in equity as such.

So it is a settled rule, that where partnership funds are used to pay for real estate, and the legal title is taken to one partner, he holds it in trust for the firm.

In Story on Partnership, secs. 92 and 93, it is laid down as follows : "In cases where the real estate is purchased for partnership purposes, and on partnership account, it is wholly immaterial in the view of a court of equity, in whose name or names the purchase is made, whether of one partner, or all ; whether in the name of a stranger, or one of the firm. In either case, let the legal title be vested in whom it may, it is in equity deemed partnership property, and the partners are *cestuis que trust.*"

The counsel for the defendant have argued that no trust could be raised in favor of the firm, in the defendant, because he gave his own note ; that that must be treated as a payment on his own account ; but in our view, where a partner purchases property for the firm, and gives his own note for the price, as between him and the firm, it is to be regarded as the debt of the firm to pay, as he acts in the transaction as the agent of the firm.

In *Coder et al.* v. *Huling*, 27 Penn. 84, the lands in dispute were bought by one partner, who took a deed to himself, and gave his notes for the purchase money, but it being shown that the notes were paid off by partnership funds, it was held that such partner held the title in trust for the partnership.

The defendant relies mainly on the case of *Pennock* v. *Clough*, 16 Vt. 500. In that case the defendant purchased a farm, took the conveyance to himself, paid part of the price, and gave his notes for the balance. The orator claimed that the defendant made the purchase for him, and that he had repaid the defendant part of the purchase money, and offered to pay the residue, and claimed a conveyance to himself, which the defendant refused to give. There was much conflict as to what the facts were, but in the opinion given by Judge BENNETT, he states the facts as follows :

"We think, then, all that the orator can claim from the proofs in the case is, that the defendant was authorized by the

orator under a parol agreement, to purchase the farm of Clark in his own name, in trust for the benefit of the orator, and to deed to him thereafter, upon a future arrangement between them, either upon principles then settled upon, or upon such as should thereafter be agreed upon."

The court decided that no valid trust was established, there being no written evidence of it, and no payment of any part of the price by the orator till long after the conveyance It will be seen from this statement of the case that it differs very widely from the case in hand, and it deserves, also, to be mentioned that the orator in that case had never been in possession at all.

In *Pinney et al.* v. *Fellows,* 15 Vt. 525, the subject of trusts was quite largely examined by Judge BENNETT, who gave the opinion.

The substance of that case was : Mrs. Pinney, having some property of her own, and a poor thriftless husband, contracted with Judge Aiken for a piece of land, for the price of four hundred dollars, paid one hundred dollars down, had a deed made to her son, who gave his note for the balance of the price, and a mortgage back of the land to secure the same. Mrs. Pinney and her husband went into possession of the land, and resided upon it for several years, and in the mean time Mrs. Pinney paid off the mortgage given by her son. The defendants, being creditors of her son, who held the title, levied upon the land, and set it off in satisfaction of their debts. The bill was brought by Mrs. Pinney to protect her equitable title against the defendants. Among the testimony taken in behalf of the orator, was that of her son, who testified that the deed to him was in trust for his mother.

The court held that as to the one hundred dollars paid by Mrs. Pinney at the time of the purchase, there was a resulting trust, but as to the residue there was none, but they further held that the son's written testimony, given long after all his title had become vested in the defendants, was sufficient to satisfy the statute of frauds, and uphold a trust for the residue. For myself, I must say that this mode of upholding the trust is wholly unsatisfactory, and seems frivolous and absurd, though I should say that her entering upon the land, paying off the mort-

Dewey v. Dewey.

gage, and her long and open possession of the land, which was notice to all the world of her title, was sufficient to entitle her to claim a conveyance, on the ground of a full performance.

And if necessary, I should feel willing to uphold the title of the partnership to the land in this case upon the same principle, but the case is not put upon any such ground, and what is said in this connection, is a suggestion of my own only.

It has also been suggested by the defendant's counsel, though no distinct point is made, that if this land is partnership property, the defendant ought not to be decreed to convey one-half of it to the orator, as there may be partnership debts, and unsettled partnership dealings, so that he may not be entitled to have one-half on a settlement and division. It does not appear, but that all partnership debts are paid, and all partnership matters settled, except this, and if so, then all that would be left to be done, would be to equally divide this land, but as there may be partnership liabilities, and other unsettled partnership matters between the parties, the decree for the orator should leave the title in the same manner, as if it had originally been conveyed to the firm, and so liable to all the equities that may attach to it, as partnership property in their hands. The decree of the chancellor dismissing the bill, is therefore reversed, and the cause remanded, with directions to enter a decree for the orator accordingly.