JOSEPH J. SULLIVAN *vs.* D. C. HASKIN, et al.

January Term, 1898.

Present: TAFT, ROWELL, TYLER, START and THOMPSON, JJ.

*Equity—Agency—Sale under Trust Deed—Bid for Bondholders—Rati-
fication.*

One of the bondholders under a trust deed bid off the property at the
trustee's sale, in pursuance of his parol agreement with several of the
others that the purchase should be for the benefit of all, and the bid was
so announced to and accepted by the trustee. *Held*, that equity would
not permit him to take the deed to himself, individually, but would com-
pel him to take it in trust for all the bondholders.

The case stands on the ground of agency, not of trust, and V. S. 2219,
against the creation of trusts in real estate by parol, does not apply.

It is immaterial that there was no prior authority from all the bondholders,
for the bid was ratified by them, through the trustee, when he accepted
it, and the bringing of the bill is itself a ratification.

CHANCERY: The cause came on to be heard upon the
pleadings and the master's report at the December Term,
1897, Bennington County, before *Taft*, Chancellor, when a
*pro-forma* decree was rendered dismissing the bill with costs
to each defendant. The orator appealed. The orator was
one of the bondholders.

*Barber & Darling*, for the orator.

It is a case of agency. *Noyes* v. *Landon*, 59 Vt. 569;
*Davis* v. *Smith*, 43 Vt. 269; *Reed* v. *Warner*, 5 Paige's Ch.
650; *Irvine* v. *Marshall*, 20 How. 558; *Church* v. *Sterling*,
16 Conn. 388.

*W. B. Sheldon*, for defendant Haskin.

*Charles H. Mason*, for defendant trustee.

TAFT, J. The Green Mountain Summer Home Company
owned four hundred acres of land, with club houses,
cottages, etc., and gave trust deeds to defendant Mason, to
secure bonds amounting to thirty thousand dollars. Mason

brought proceedings to foreclose his trust deeds, and the court ordered him to sell the property on the 5th day of August, 1896; the proceeds to be applied in payment of the bonds, secured by the trust deeds, the interest thereon, and the costs of proceedings.

The defendant Robinson was appointed receiver of the estate, real and personal, of the company, and he was ordered to sell at the same time, all the personal and real estate belonging to the corporation which was then in his hands as receiver, and which was not covered by the trust deeds.

The sales were made, pursuant to the orders; the property covered by the trust deeds for $1000, the other real estate was sold for $2000, and the personal property for $2250. One Martin, a bondholder, bid off the personal, and one Hendrickson the real estate, the latter assigning his interest in his bid to the defendant Haskin who, it is conceded, has the same rights that Hendrickson acquired by his bid. The legality of the sale and the prior proceedings are not questioned by either party.

The trust-deed property was, and is, valued at eight thousand dollars. Prior to the sale some of the parties interested, including some of the bondholders, made an estimate of the amount necessary to pay the taxes thereon, and the costs and expenses of the foreclosure and sale, of one thousand dollars. The real estate held by the receiver was valued at two thousand dollars; and it was necessary that it should sell for that sum, in order to discharge the liens upon it, with the expenses and charges.

Prior to the sale on the 5th day of August, there was a conference held between Hendrickson, Haskin and one Martin, (who represented several bondholders) who were all bondholders, at which the trustee and the receiver were present, in which it was talked that there was no probability that the property would bring a sum large enough to be of benefit to the general creditors; and the question considered

by them was what course the bondholders should take.

It was finally agreed that the property covered by the trust deeds should be bid off for the benefit of the bondholders at a sum which should be sufficient only to pay the taxes, and costs and expenses of foreclosure and sale, unless some one should bid higher; and the estimate before referred to was then made, as to the amount of the bids necessary to be made. It was agreed between the three persons named, that Hendrickson should make all bids for the benefit of the bondholders; and at the auction sale, Hendrickson stated that his bid was for the benefit of the bondholders.

At the same conference it was also considered and agreed, that the other real property must be sold, in order to pay liens upon it, and expenses and charges, for two thousand dollars. The personal property was bid off by one Martin, and is not involved in this proceeding. Haskin agreed to furnish the money to pay the amount to be paid on the bids, and take an assignment of them; and he did pay the amount and take the assignment, and now stands in the shoes of Hendrickson, in respect to the bids and the purchases.

Haskin now declines to take a deed to himself as trustee for the bondholders but insists upon one to himself individually.

The finding of the master is clear and explicit, that Haskin and Hendrickson acted for the bondholders; that the property was bid off for the bondholders, and that Mason, the trustee, would not have sold as he did, had the bid been otherwise. In fact, it would have been a gross breach of his duty as trustee, when he was required to act in good faith to his beneficiaries, to permit real estate valued at eight thousand dollars to be sacrificed for one-eighth of its value.

Haskin, in conducting the bids acted for the bondholders, and intended that all bondholders who chose, should be permitted to share in the purchase; but afterwards he and his associates insisted that none of the bondholders should be permitted to share in the purchase, except such as he and his associates might permit.

It is argued by the defendants' solicitor that no relief can be granted the orator for that by V. S. § 2219, "No trust concerning lands, excepting such as may arise or result by implication of law shall be created or declared, unless by an instrument in writing signed by the party creating or declaring the same, or by his attorney." The bill is not brought to declare a trust in land, and the statute has no application to the case before us. Had Haskin, acting for himself and not for the bondholders, bid off the property, and the orator and his associates sought a conveyance from him, or a declaration of trust in the lands, under a parol agreement with him, he might effectually invoke the aid of the statute. But the effect of this proceeding is to prevent one, when acting as an agent, from taking the benefit of a contract made by him for and in behalf of, his principal. The power of a court of equity to do this is unquestioned. It is analogous to the power of that court to reform a contract, *i. e.* reduce it to the terms agreed upon by the parties. In case of a trust created by parol, there is nothing to be reformed; the contract is just as the parties agreed, and being in parol, it cannot be enforced. The agreement found by the master was that Hendrickson should bid off the property for the bondholders, and he did so. It was then his, and after the transfer of the bids to Haskin, the latter's duty to take a conveyance of the property, either to the bondholders directly or to himself in trust for them.

It is true there was no prior authority from all the bondholders to Hendrickson and Haskin to make the bids in behalf of the beneficiaries, but the acceptance of a contract negotiated in one's behalf by a volunteer agent perfects it, as if made by precedent authority. *Midd. College* v. *Williamson*, 1 Vt. 212. The report shows that the orator, for himself and the bondholders he represented, accepted the bids; in fact the bringing of the bill is tantamount to an acceptance. The case is like one when a partner buys land with partnership funds for partnership purposes, equity

always deals with it as partnership assets, not on the ground that a trust arises by implication of law, but upon the ground of agency. And this is the recognized rule whether the agent acts fraudulently or in good faith. *Dewey* v. *Dewey*, 35 Vt. 555. This case was put not upon the ground of an implied trust, as contended by defendant's solicitor, but upon the ground of agency. The doctrine of relief in cases of agency is recognized in *Pinnock* v. *Clough*, 16 Vt. 500, although that case was clearly within the statute.

The cause will be remanded to the court of chancery with directions to order a conveyance to such person as it may be advised in accordance with the wishes of the bondholders, or a majority of them, or to such other person as the court deems advisable, in trust for the bondholders, upon such terms and with such conditions as equity requires.

*Decree reversed and cause remanded with mandate.*