### Barzillai Pinnock *v.* Caleb Clough.

#### In Chancery.

The defendant purchased a farm for the orator, but there was no written agreement between them, nor did the orator pay *at the time* any portion of the purchase money. The defendant took the deed running to himself, and paid a portion of the consideration, and gave security for the remainder. On a bill, brought by the orator to compel the defendant to convey the legal title to him, it was held that no such trust was created by the transaction as could be enforced in chancery.

To create a resulting trust, or trust by implication of law, in such case, within the meaning of the statute requiring a written memorandum declaring a trust, the purchase money, or some part of it, must have been paid by the orator at the time of the purchase, or been paid from his funds; it is not sufficient that it was paid to the defendant after the purchase, or to a third person in payment of the securities given by the defendant at the time of the purchase.

But, a bill being brought to compel a conveyance of the legal title, in the latter case, to the orator, the court, although holding that the orator has no such equitable title as will justify a decree for such conveyance, will yet retain the bill, and decree that the defendant pay to the orator whatever sum the orator may have paid, subsequent to the purchase, towards the purchase money.

And no cost will, in such case, be allowed to either party.

APPEAL from the court of chancery.

The orator set forth in his bill, in substance, that Zelah Pinnock, the father of the orator, had, in the year 1834, conveyed to one Jasper Clark a farm then owned by said Zelah, and taken back therefor a bond, signed by Clark, conditioned for the support of said Zelah and his wife during their natural lives. That, the said Clark being apparently about to become insolvent and unable to fulfil his bond, and the orator being in that case bound by law to maintain the said Zelah and his wife, if he had sufficient means therefor the orator was desirous of purchasing said farm of Clark. That, there being difficulties in the way of the orator's doing it personally, the defendant offered and agreed to make the purchase for him, and the orator stated to him what proposals he was willing to make.

The bill further set forth that the defendant applied to Clark in reference to said purchase, and that finally, Aug. 29, 1839, the said Clark agreed with the said Clough, that, for $100 to be paid at the delivery of the deed, $100 the first of December then next, and $50 payable in goods, and an obligation to indemnify the said Clark against the bond held by said Zelah against him, he would convey the premises to the orator. That the defendant, by assuring Clark that he was acting for the orator, and promising Clark that he would, within a short time named, convey the premises to the orator, persuaded Clark to convey the premises directly to the defendant, and the defendant paid Clark $100 in money, and gave him two notes, as agreed, and also executed to him a bond to indemnify him against the bond which Zelah Pinnock held against him; and that the defendant soon after informed the orator what he had done, and expressed a willingness to convey the premises to the orator, upon the papers being properly changed. That the orator was wil-

ling to perform upon his part, and did soon after, with the knowledge and assent of the defendant, pay the $100, advanced by the defendant, to one Newton, of whom the defendant had borrowed it, and became responsible for, and did subsequently pay, the defendant's note for $50, payable to Clark in goods; and that he repeatedly requested the defendant to have the requisite change made in the writings, and convey the premises to him,—which the defendant from time to time evaded doing.

The bill further set forth that afterwards the defendant conceived the fraudulent design of retaining the said premises to himself, and induced Clark, for the consideration of $100 then paid by the defendant to him, to surrender to the defendant the bond of indemnity executed by him to Clark, as above stated, representing to Clark that the orator wished it to be so done. And that the orator had specially tendered to the defendant full payment for all that he had become liable for to Clark on the purchase of the premises, and had offered to execute any proper writing or indemnity against the bond from the defendant to Clark, and had requested a conveyance of the premises to himself; but that the defendant had absolutely refused to make such conveyance.

The orator prayed that the defendant might be decreed to convey to him the premises, and for such other and farther relief as to equity might appertain.

The defendant, in his answer, denied the material allegations in the bill; and especially denied that he ever agreed to take a conveyance of the premises from Clark directly to the orator, but asserted that he made the purchase from Clark on his own account, and paid therefor the consideration set forth in the bill. He also claimed that whatever agreement there might have been was by parol, and not in writing, and claimed the benefit of the statute of frauds.

The answer was traversed, and much testimony was taken upon both sides, the material parts of which are fully detailed in the opinion given by the court.

The court of chancery decreed that the defendant convey to the orator the premises, and that the orator pay to the defendant the sum paid by the defendant to Clark for the bond of indemnity, given by the defendant to Clark, deducting from said amount the orator's costs. From this decision an appeal was taken by both parties.

Pinnock *v.* Clough.

*T. Hutchinson* for orator.

We consider it abundantly proved that the defendant was employed by the orator, and was acting as agent and in trust for him,—that the orator agreed to pay and did pay the $50 payable in goods, and the $100 which the defendant borrowed of Newton,—and that, when the last note from the defendant to Clark became due, the orator offered to the defendant the full amount of that note, and interest, and requested a deed,—which the orator refused to give. The true reason was, the defendant had laid a plan to keep the farm himself; and he obtained his bond of indemnity from Clark by telling him a false story as to the orator's wishes, and afterwards boasted, as appears from the testimony of Clark, that he had cleared $500 in the business.

The defendant, in his answer, insists on the statute of frauds and perjuries. In reply we say, if there is any thing in our allegations and proofs, we show a fraudulent breach of trust, which that statute does not reach.

By the decree of the Chancellor the cost of the orator was swallowed up in balancing what Clough fraudulently (as we say) paid to get up his own bond to Clark, so that he might keep the farm, and leave the orator to support his father and mother without help from this property, which was virtually dedicated to such support, and which left Clark wholly unable to fulfil his bond for such support. We claim to be allowed, in some way, the reasonable rents and profits of the land from the time the defendant took possession to the time of final decree.

*Chandler & Billings* for defendant.

The orator cannot recover, unless he establish a resulting trust, or a part performance, within the meaning of the statute.

1. There is, in this case, no resulting trust. The defendant purchased the land in his own name, and with his own means and credit. To establish a resulting trust it must appear that the orator paid the purchase money, or some part of it, at the *time* of the purchase, or that his funds were used in the purchase. 4 Kent. 305. 2 Story's Eq. 444. *Jackson* v. *Bateman,* 2 Wend. 573. *Botsford* v. *Burr,* 2 Johns. Ch. R. 405. *Smith* v. *Burnham,* 3 Sumner 612. Sugd. Vend. 418. 1 Hilliard's Ab. 214.

Pinnock *v.* Clough.

2. Part *payment* is not sufficient to take the case out of the statute. No act will be held a sufficient part *performance,* to take the case out of the statute, unless it would operate as a fraud upon the other party, and justice cannot otherwise be done. *Clinan* v. *Cook,* 1 Sch. & Lef. 40. *Foster* v. *Hall,* 3 Ves. 712. *Frame* v. *Dawson,* 14 Ves. 386. Sugd. Vend. 80. Newland on Cont. 191. *Parkhurst* v *VanCortland,* 1 Johns. Ch. R. 284. *Bassler* v. *Niesly,* 2 Serg. & R. 356. *Meach* v. *Stone et al.,* 1 D. Ch. 182–9. *Webber* v. *Paine,* Ohio Cond. R. 120. *German* v. *Mackin,* 6 Paige 293. Story's Eq. 64.

3. The precise terms of the contract must be clearly proved. Indefinite and loose declarations of the party are not to be relied upon. The statute was enacted to prevent their being used. 2 Story's Eq. 69. 1 Johns. Ch. R. 149. *Smith* v. *Burnham,* 3 Sumner 437. *Leake* v. *Leake,* 10 Ves. 518. Such is the character, in this case, of all the testimony tending to prove the contract.

The opinion of the court was delivered by

BENNETT, J. The object of this bill is to compel the defendant, who has the legal title, to convey the land, described in the bill, to the orator. The bill alledges, in substance, that the orator employed the defendant, as his agent, to purchase the premises for him of one Jasper Clark, and to take the conveyance of them directly to the orator. This, in the answer, is unequivocally denied; and the defendant swears that he purchased them on his own account, and sets out in his answer the consideration which he paid, and which is in unison with the consideration set out in the bill.

It is important to see how far the answer is overcome by the other proofs in the case, and the material allegations in the bill sustained. There is no written contract between these parties, and the orator relies, in the main, upon the after conversations and admissions of the defendant. Some six or eight witnesses testify that they heard Clough say that he had bought the farm for *Barzillai,* and that he did not want it for himself; and one (Mr. Baker) adds that he said that Barzillai was to give him the same which he paid, and pay him for his trouble. Morris says that Clough told him that he had bought the farm for Barzillai, that Barzillai and wife employed him to buy it, and that he had taken a deed of it, and that Barzillai

might have it, and he did not care if he did not pay him in five years. The testimony of Ira Davis shows that Clough said he was making a trade for Barzillai, and that he had agreed to pay him well for it, and that he was to pay him what he had to pay Clark, and get up the bond which Clark had given for the support of old Mr. Pinnock and his wife. Davis testifies that he understood the same, in substance, from both of the parties, when together. Other witnesses testify to the declarations of Clough, that he made the trade for Barzillai. We are all satisfied that Clough purchased the place with an understanding between himself and the orator that he was to have it of him upon some terms, and probably upon those stated by Ira Davis. The subsequent arrangement, by which the orator paid the note given by Clough to Newton for monies to pay to Clark towards the land, and also his payment of the fifty dollar note, lead to the same conclusion.

But the important inquiry is, was there an agreement made between the parties, before the purchase, that the defendant should, as the agent of the orator, make the purchase in the name of the orator and take the title to the principal, and not to himself? The answer negates any such agreement. The fact that Clough paid and secured to Clark the consideration to be paid for the farm, from his own means, renders it highly probable that it would be the understanding of the parties that the defendant should, for the time being at least, hold the legal title, though the purchase might have been designed ultimately for the benefit of the orator. This is consistent with the repeated declarations of Clough, that he was making the trade for *Barzillai*, and that Barzillai was to have the farm. It seems also, that, when Barzillai and Clough came to Dr. Davis, and the deed running to Clough and the contract which he had given to Clark were read to the orator, he expressed no surprise, or dissatisfaction, that the deed was given to the defendant, but at once commenced a negotiation with Clough, with a view to have him deed to him.

The orator has not alledged, in his bill, that the defendant *fraudulently* took the deed to himself, after having agreed to take the deed to the orator. The allegation is, that the defendant persuaded Clark to give the deed directly to himself, upon his promising soon after to give a deed to the orator. It is averred in the bill, that,

64

*after this,* Clough conceived the fraudulent purpose of retaining the land and of refusing to deed to the orator. There is, I think, no witness who testifies to an agreement between the parties to this suit, that the deed from Clark was to have been given directly to the orator; though it is true that Clark testifies that it was first agreed between him and Clough that he should deed directly to the orator, yet, he says after some conversation with Davis, it was agreed between him and Clough that the deed should be given to the latter, and that he should *thereafter* deed to the orator, whenever it should be so agreed between them. The orator can claim no benefit from any agreement between the defendant and Clark, being in no way a party to it; and besides it eventuated in an agreement to give the deed to the defendant. We think, then, all that the orator can claim from the proofs in the case is, that the defendant was authorized by the orator, under a *parol* agreement, to purchase the farm of Clark in his own name, in trust for the benefit of the orator, and to deed to him *thereafter,* upon a future arrangement to be made between them, either upon principles then settled upon, or upon such as should thereafter be agreed upon.

The question then arises, whether such a state of facts creates an *equitable title* to the farm in the orator, which will enable him to call upon the defendant in a court of chancery to surrender to him the *legal title.* The statute enacts, " that no *trust concerning lands,* excepting such as may arise or result by implication of law, shall be *created* or *declared,* unless by an instrument in writing, signed by the party *creating* or *declaring* the same, or by his attorney." There are no facts in this case which will create a *resulting trust,* or, as it is called in the statute, a trust by implication of law. The consideration paid to Clark for the farm was not furnished by the orator, but was paid by the defendant himself at the time of the purchase.

The payment made by the orator of the fifty dollar note and of the one to Newton, *subsequent* to the purchase made by the defendant, cannot have the effect to raise a *resulting trust* in behalf of the orator. To have such effect, the consideration, or some part of it, which was paid for the land, must have been furnished by the orator *at the time* of the purchase. *Botsford v. Burr,* 2 Johns. Ch. R. 414. *Steere v. Steere,* 5 Johns. Ch. R. 1. Though we are satisfied that the orator has paid to the defendant a part of the

consideration, upon which he was to deed to the orator, yet this cannot vest an *equitable title* in him. It is well settled, at the present day, that the mere payment of a part of the consideration is not such a part execution of a contract, relative to the sale of lands, as will take it out of the statute of frauds.

The case of *Bartlett* v. *Pickersgill,* reported in a note in 4 East 576, and also in Eden's Rep., is much like the one at bar. In that case, the defendant bought an estate for the plaintiff. There was no written agreement between them, and the plaintiff paid no part of the purchase money. The deed was taken to the defendant, who afterwards refused to convey to the plaintiff. Relief was denied to the plaintiff. Lord Keeper Stanley says, " to allow parol evidence in such a case, would be to overturn the statute." So in *Botsford* v. *Burr,* 2 Johns. Ch. R. 409, the chancellor says, that if the party, who sets up a resulting trust, made no payment *at the time of the purchase,* he cannot show by parol that the purchase was made for his benefit, or on his account. In Sugden on Vendors, 6th Am. Ed., Vol. 3, p. 180, the rule is laid down, that, if a man merely employs another person by *parol,* as an agent to buy an estate, who buys it for himself and denies the trust, and *no part of the purchase money is paid by the principal,* and there is no written agreement, he cannot compel the agent to convey the estate to him, as it is said, that would be directly in the teeth of the statute of frauds. I am not aware that the doctrine of the case of *Bartlett* v. *Pickersgill* has been impugned. Its authority is fully recognized by Chancellor Kent in *Boyd* v. *McLean,* 1 Johns. Ch. R. 582, 589, in *Botsford* v. *Burr,* 2 Johns. Ch. R. 405, 409, and in *Steere* v. *Steere,* 5 Johns. Ch. R. 19, and by Judge Story in *Smith* v. *Burnham,* 3 Sumn. Rep. 464.

Upon the same principle, it has been held, if two persons enter into a treaty for the purchase of an estate, and one of them desists and permits the other to go on with the intended purchase, on his promising, by parol, to let him have the part of the estate which he desired, yet this agreement cannot be enforced on account of the statute of frauds. *Lamas* v. *Bailey,* 2 Vern. 627. In *Atkins* v. *Rowe,* Moseley's Rep. 133, and digested in Sugden on Vendors, 6th Am. Ed., Vol. 3, 171, certain persons, desirous of obtaining a lease of three houses, agreed that one of them should bid for all the houses, but that the lease should be for their *joint* benefit. He ac-

cordingly bid, and a lease was made to him alone. Upon a bill filed by the others, that they might have the benefit of the lease, and the purchaser be declared a trustee, the chancellor dismissed the bill, and his decree was affirmed in the House of Lords. Cases Dom. Proc. 1730.

The case of *Leman* v. *Whitley*, 4 Russ. 423, is strongly in point. There a son had conveyed to his father, nominally as a purchaser, but in reality as a trustee, that the father, who was in better credit than the son, might by mortgage raise money on the estate for the use of the son. The father died without having raised the money on the estate; and, upon a bill filed by the son for a re-conveyance, it was held that the case fell within the statute of frauds, and that the trust could not be established by *parol evidence*. In *Smith* v. *Burnham*, 3 Sumner's R. 435, the bill alledged that the parties had agreed to become co-partners in purchasing and selling lands and lumber, upon a joint capital furnished by both, and the profit and loss to be equally shared between them. The bill then proceeded to alledge, that, in pursuance of the agreement, the defendant made certain purchases of lands and lumber, and that the plaintiff had made certain advances to the defendant in money, on the same account. The object of the bill was a dissolution of the partnership, and a settlement of the partnership accounts, and *that the defendant should be decreed to convey to the plaintiff his equitable share of what lands should have remained unsold.* The statute of frauds was insisted upon, in defence; and, upon a review of the authorities, it was held that the plaintiff could not found an equitable claim to a conveyance upon *parol evidence.*

Our statute is in effect the same as the English statute, and of course decisions under that statute are authorities for us. I am aware that it has been held, where a person has acted in a fiduciary relation, as an attorney, in making the purchase, and, in violation of the trust, has fraudulently taken the deed to himself, instead of taking it to his principal, that such a fraud in the execution of the trust is a good ground in equity to entitle the principal to a conveyance. The case of *Lees* v. *Nuttall*, 1 Tamlyn's R. 282, is of this description. But that case is distinguishable from the one now before us in the important fact, that here there was no fraud in the execution of the trust. It was expected between the parties that Clough would make the purchase in his own name, and take

the title to himself, and the farm to be upon a future arrangement deeded to the orator. *Sweet* v. *Jacob*, 6 Paige 364, is to the same effect. There was no fraud in Clough in thus taking the title to himself, but it is in the *subsequent wrongful detention* of the title; and the bill itself alledges, *that after the purchase* the defendant *conceived* the fraudulent purpose of retaining the land.

I am not aware of a case, like the present, where the trust is denied in the answer, and the statute of frauds insisted upon as a defence, in which a conveyance has been decreed upon *parol* evidence. If it should be allowed, we might well enquire where would be the stopping place. The statute, which requires that the trust should be *created* in writing, is most salutary in its provisions, and should not be overturned to meet the seeming equity of a particular case.

Though we cannot give the orator the relief which he asks, yet he is entitled to have refunded to him so much as he has paid towards the land. He might have his action at law for the money, but we are not disposed to multiply suits by turning him round to a new action. In *Clinan* v. *Cook*, 1 Sch. & Lef. 43, the court refused to decree a specific performance of a contract, which was the object of the bill, but yet decreed the money, which had been paid as a part of the consideration, to be refunded with interest. It is a common principle, that chancery, in many cases, having taken jurisdiction of a cause for one purpose, will retain it for another. All the facts are stated in the bill, necessary to give this relief, and are proved on the trial, and, under the general prayer in the bill, this relief may be granted.

The result is, the decree of the chancellor must be reversed, and the case is remanded to the Court of Chancery, with directions to cause an account to be taken, and the sum ascertained, which the orator has paid for the benefit of the defendant towards the premises in question, and that he be decreed to pay the same to the orator, together with the interest on the same, by a short day to be fixed by the chancellor, and that no costs be decreed to either party. The orator should not be allowed costs, as he has not succeeded upon the main merits of his bill, and the defendant has, under the circumstances of this case, no claim for costs; especially as we consider that he detains the title to the farm in himself against good faith and the *moral* right of the particular case.