JARIUS  C.  FAIRCHILD and  LYDIA  A.  RASDALL, Administrators of ABEL  RASDALL,  *vs.* WM. M. RASDALL, Appellant.

APPEAL FROM CIRCUIT COURT, DANE COUNTY.

Heard August 6.]                    [Decided November 1, 1859.

*Frauds, Statute of—Parol Agreement—Trusts—Evidence— Mortgage—Lien.*

A. being apprehensive of an arrest for a criminal offence, and desirous of securing his property for the use of his family, made a deed of his real estate, absolute on its face, to W. his brother, which was recorded, and after A.'s death, his administrators filed a bill to declare the trust to the representatives of A., created by the want of consideration, and by a parol agreement by W. with A., made at the time of making the deed, to hold the land in trust for A. *Held*, that the evidence of the parol agreement could not be received, although it fully sustained the agreement. The provisions of the statute of frauds are conclusive on that question.

Evidence of a parol agreement to take and to hold the title to real estate, for the benefit of the grantor, cannot be given in a trial to compel the grantee to execute the agreement, on the ground that his refusal to do so, is a fraud upon the rights of the grantor.

Parol evidence cannot be received to prove that a deed, absolute on its face, was given in trust for the benefit of the grantor, unless there was fraud in procuring, or accident or mistake in the execution of the deed.

The mere refusal of a grantee to execute a parol agreement to hold real estate in trust for the grantor, is not such a fraud as will justify the admission of parol evidence of the agreement.

The rule permitting parol evidence to convert an absolute deed into a mortgage, might, by analogy, sustain the introduction of parol evidence to take a case of express trust out of the statute of frauds. But that rule, so far as it admits the introduction of such evidence, independent of any alleged fraud or mistake, preventing the execution of a defeasance being considered an invasion of the statute, its principle will not be extended further than it is already established.

The rule permitting parol evidence to be received to convert a deed, absolute on its face, into a mortgage, recognizes the rule that the statute of frauds does not permit the introduction of parol eviden ce to create a trust; and it also proceeds upon the ground that there would be fraud in permitting the grantee to hold the deed as an absolute conveyance.

A bill to establish a trust and obtain a reconveyance, is not sufficient to admit parol evidence to prove a vendor's lien, under the prayer for general relief; but the bill should claim a vendor's lien, that the defendant might put that question at issue, and then a decision could be had upon it.

The case of *Rogan vs. Walker*, 1 Wis., 527, considered and distinguished.

The cause of action in this case is sufficiently stated in the opinion of the court. A large amount of evidence was taken, fully establishing, by parol, the averments of the bill ; but as it is rejected, in the consideration of the opinion of the court, it is omitted here. The following is the finding and opinion of the circuit court :

This action having been called in its order on the calendar, and a trial by jury having been waived by the parties hereto in open court, after hearing the evidence presented, and after mature and due deliberation thereon, I do hereby report that I find, as questions of fact, that the plaintiffs were appointed administratrix and administrator of the estate of Abel Rasdall, deceased, as alleged in said complaint.

And I further report, that Abel Rasdall, the intestate, was, up to the 7th day of February, 1843, the owner of lots nine, the north half of lots six, and fractional parts of lots seven and eight, in block one hundred and seven, in the city of Madison, being the property known now as the City Hotel property, and also a part of lot five, in block one hundred and five, the part with the barn thereon, and now used as a part of the City Hotel property.

And I do further find, that on the seventh of February, 1843, the intestate executed, and caused to be delivered to the defendant, a deed of said property before mentioned, together with other real estate. That lot seven mentioned in

said deed was intended to convey the same lot of ground, as is known as lot nine in other plats of said village, and although there is a discrepancy in the maps, the particular parcel of land conveyed, and intended to be conveyed, is the lot immediately below lot ten in said block, and the lot and piece of ground upon which a part of the hotel building stands, and upon which it was originally erected by Abel Rasdall, the intestate. And that the deed of said lot nine, afterwards made to Wm. M. Rasdall, was to remove all question as to title to that particular piece of land upon which the hotel now stands, and the sheriff's deed thereof to the defendant, for the benefit was of the intestate.

And I do further find that portion of lot five, in block one hundred and five, upon which the barn stands, was the property of Abel at the time above mentioned, and the deed of the same, to the defendant, was for the benefit of the said Abel Rasdall, deceased, to perfect a title thereto, and that the defendant held that part of this lot as trustee for the benefit of Abel Rasdall, at the time of his death, and had no personal interest therein.

And I do further find, that the said Abel Rasdall's deed to William, dated on the seventh day of February, 1843, was, without any consideration, paid by the defendant in this suit. And that the real estate therein described, was conveyed to him to hold for the sole use and benefit of the said intestate; and that the defendant did not, thereby, acquire any title thereto, except as trustee, for the sole use and benefit of the said intestate.

And I do further find, that the defendant has never paid any consideration for said property, and that the said property, known as the City Hotel property, and mentioned and described in the complaint, was in equity the property of the intestate.

And I do further report that I find, as a question of fact, that the intestate did, after the deed to the defendant of February 7th, 1843, with the knowledge of the defendant, lay out and expend upon said real estate, and principally on lot nine or seven, in block one hundred and seven, a large amount of his own means in erecting the hotel building, now situated thereon, and the intestate, by and with his own means, increased the value of said property at least six thousand dollars, and that the defendant stood by and saw the intestate expend that amount of money, and knew that he claimed to own the

property; but the defendant did not interpose then any claim to said property, under said deed, or otherwise, or dispute, or in any manner question the title of the intestate thereto.

I do further find, that the intestate has, during the whole time since the conveyance thereof to the defendant, frequently, with the defendant's knowledge and consent, controlled and exercised acts of ownership over the same; and that the defendant, up to the death of the intestate, never claimed to own or have any interest in the same.

And I do further find, as a question of fact, that said real estate was conveyed to the defendant in strict trust, for the use and benefit of the intestate and his heirs, and that the defendant had no interest therein, and never paid any consideration therefor; and that the defendant, at the time of the death of the said intestate, on the sixth day of June, 1857, held said property as naked trustee for the sole benefit of said intestate and his heirs, and had no interest therein. And that the defendant, soon after the death of Abel Rasdall, commenced proceedings against Van Wie, to remove him from the possession of said premises, under chapter 117 of the Revised Statutes of this State, and to deprive the plaintiffs in this suit as the representatives of the said Abel Rasdall, of the benefit and advantages of the rents incurred to be paid to the said intestate by said lessee.

I do, therefore, find, as a conclusion of law, that the defendant in this suit was a naked trustee of lot nine, the north half of lot six, and fractional part of lots seven and eight, in block one hundred and seven, and that part of lot five in block one hundred and five, upon which the City Hotel barn stood, being the property and lots known as the City Hotel property, in the city of Madison, for the use and benefit of Abel Rasdall, now deceased; and that he, the defendant, had no beneficial interest therein. That the deed of the 7th of February, 1843, was a deed in trust for the use and benefit of Abel Rasdall, and that by virtue of the statutes afterwards enacted the legal estate became vested in Abel Rasdall, who had the beneficial interest under said deed; and the said Abel Rasdall was, at the time of his death, seized of a full, sure and perfect, equitable and legal estate, in said above described premises, and that the said estate descended to his heirs at law, free and clear of any interest of the defendant as trustee, under the deed of February 7th, 1843, or any other claim of said defendant whatever

Rasdall's Administrators vs. Rasdall.

And I do further find, as a conclusion of law, that the said defendant, in standing by and permitting the said Abel Rasdall to occupy, control, and claim to own said property, and by his permitting the said Abel Rasdall to make the large and valuable improvements on said property which he did, without claiming or setting up any claim thereto, under said deed, is estopped now from setting up any claim thereto. That he comes within the long established rule in courts of equity, that "he who neglects to speak when he should, is not permitted to when he would," to the prejudice of another.

I do further find and adjudge, that the title to the real estate hereinbefore mentioned, was, on the sixth day of June, 1857, in Abel Rasdall, now deceased, and the same on his death passed to his heirs at law; and that the plaintiffs in this suit, as the personal representatives of said Abel Rasdall, deceased, are entitled to the possession of said property. And that the lease to Isaac Van Wie, executed by Abel Rasdall in the month of March, 1857, as mentioned in the complaint in this action, is valid and binding, and entitles the said Van Wie to the use and occupation thereof, upon his complying with the terms thereof.

And I do further find and adjudge, that the said defendant and all persons claiming or to claim under him, be perpetually enjoined and restrained from prosecuting any suit or proceeding against said Van Wie, or any other person, for the recovery of the possession of said premises hereinbefore mentioned, or any part thereof, or from doing any act or thing whatever, to interfere with the possession or right of possession of the said plaintiffs, as the representatives of Abel Rasdall, deceased; and from doing any act or thing whatever, to obtain the possession or control of said premises, under any right or title acquired prior to the commencement of this suit.

And it is further ordered, that the defendant pay the costs of the plaintiffs in this case to be taxed.

                    A. L. COLLINS, Circuit Judge, &c.

On this finding the judgment was entered, and the defendant appealed to this court.

*Orton & Hopkins,* for the respondents.

*Abbott & Clark,* for the appellant.

*By the Court*, PAINE, J.   This suit was brought by the plaintiffs as administrator and administratrix of the estate of Abel Rasdall, deceased, to enjoin the defendant from proceeding in a suit to recover possession of certain real estate in the city of Madison, and to compel a conveyance by him to the plaintiffs.   The grounds set forth for relief are that the plaintiffs' intestate, having in a personal encounter in 1843, dangerously wounded a man named Smith, and being apprehensive of arrest and prosecution, and desirous to so arrange his affairs that he might escape from the country, conveyed the property in question to the defendant, who was his brother; and that although the deed was absolute on its face, and purported to be for the consideration of $2,000, yet that it was without consideration, and that the defendant agreed to hold the property in trust, for the use and benefit of the deceased and his heirs.   There was also an allegation in the complaint, that there was a deficiency of assets in the hands of the plaintiffs to pay the debts of the deceased, for the purpose of enabling the plaintiffs to recover, under the provisions of § 16, chap. 100, of our present Revised Statutes, which authorize administrators, in such cases, to sue for and recover, for the benefit of creditors, any property which the deceased may have conveyed in such a manner that the conveyance was void, as against creditors.   But there was no proof offered to sustain this allegation, and the case must, therefore, be decided as though it had not been made.

We have no doubt, from the evidence presented, that the conveyance was made by the deceased under the circumstances, and with the understanding set forth in the bill, though this is denied by the answer.   And were this evidence proper to be received, it would fully sustain the decision of the court below.   But it was parol evidence, and was all objected to by the defendant's counsel, and the objection is fatal.

It is one of those cases where the real merits and justice of

the matter create a strong desire to escape from the application of the stern rule of law, which prohibits an inquiry by means of parol evidence. But the barrier is too strong to be broken over; and while it restrains us, furnishes its own justification in the fact, that though, in individual instances like the present, it may work hardship, yet in the main it promotes private security and the general good.

We do not feel called upon to cite authorities, to show that in the absence of fraud, accident, or mistake, parol evidence cannot be received to prove that a deed, absolute on its face, was given in trust for the benefit of the grantor; and we have not been able 'to find any thing in this case to make it an exception. We cannot see why, if this evidence is to be received to establish this trust, every other deed in the state may not be shown by parol to have been given upon trust, and the statute of frauds be entirely annulled.

But the counsel for the complainants, seeming conscious of the difficulty of sustaining the admissibility of this evidence for the purpose of establishing the trust, yet contended that although inadmissible for that purpose directly, it should be admitted, and the relief granted, on the ground of fraud. This presents a question of very great importance, and in view of the authorities on the subject, of no little difficulty. There is no doubt that if any fraud had been alleged, by means of which the defendant procured the conveyance from his brother to himself, or any mistake, by which the instrument was made absolute, instead of expressing the trust intended, parol evidence would have been admissible to show such fraud or mistake. This conveyance would thus stand upon the same footing with all other contracts, and come within the conceded power of courts of equity to inquire, by parol evidence, into frauds or mistakes in their procurement or execution.

But no such fraud or mistake is alleged here. On the con-

trary, it appears from the whole tenor of the complaint, that the conveyance was made by Abel Rasdall, upon his own motion, and without any solicitation or instigation of the defendant, and that it was intended to be, as it is, absolute on its face.

The only fraud alleged, therefore, is that of the defendant's now claiming the property in violation of the parol trust, and whether that constitutes such a fraud, as will justify a court of equity in overturning the written contract of the parties upon parol evidence, is the question presented.

It cannot be denied that if the court can, by any legal means, arrive at the existence of the parol trust, then the violation of it by the defendant, in wresting their inheritance from the family of his dead brother, is most grossly fraudulent. And to avoid such injustice, courts of equity have frequently seized upon the slightest circumstances connected with the procurement of the conveyance, to avoid the operation of the statute of frauds. And there are cases, the principle of which would warrant the assertion that the attempt by the defendant to claim the rights which this deed, on its face, gives him, contrary to the parol trust, is such a fraud as would justify the relief upon parol evidence. But I confess my inability to see how, upon principle, this position can be sustained, consistently with a due observance of the statute. Placing the relief in such cases upon the ground of fraud, is implied by admitting that the parol evidence cannot be admitted to establish the trust, for the purpose of enforcing it, directly as a trust. And this is also expressly admitted. But it seems apparent to my mind that to say, in such a case, it shall be admitted to establish the fraud, is equally a violation of the statute. Because the fraud consists only in the refusal to execute the trust. The court, therefore, cannot say that there is a fraud, without first saying that there is a trust. And the parol evidence, if admitted, must be admitted to

establish the trust, in order that the court may charge the
party with fraud in setting up his claim against it. Conced-
ing then, that they cannot execute the trust directly in such
case, because it cannot be proved by parol, is it not a mere
evasion of the statute to say, that they will allow it to be
proved by parol for the purpose of enforcing it indirectly, by
charging the party with fraud for refusing to execute it?
Such a course does not relieve the court from the charge of
violating the statute, but subjects it to the odium of an at-
tempted, but unsuccessful evasion.

It may be said that fraud ought not to be tolerated. That
is very true, but that is not the question. The question is,
whether the court, without violating the law, can get at the
fraud. There is no doubt that trusts ought to be enforced;
but that is not a sufficient reason for admitting parol evi-
dence to establish them. When the party offers this, the
court says no; the law forbids it.

So, however desirable it may be to prevent fraud, if the
fraud cannot be established, except by first showing a trust
by parol, is not the same answer equally applicable? If
not, it is difficult to see that the statute of frauds is to have
any practical effect; for although trusts and agreements con-
trary to the written contracts of parties, cannot be proved
by parol so as to be enforced as such, yet they may be
proved and held of sufficient force to charge the party with
fraud in not observing them. And the result is practically
the same. It is for courts to say to the parties, "These
agreements are not valid, not binding; we cannot compel
you to observe them; yet if you do not observe them with-
out being compelled, we will hold that to be a fraud on
your part, and for the fraud, will compel you to execute
them."

It is impossible to reconcile with principle very many of
the adjudications upon the statute of frauds. Courts seem to

have been so intent upon administering justice in the particular case, that they have frequently lost sight of its provision, and their action has often amounted to little less than the exercise of the right to appeal, or suspend its operation whenever they deemed that the real justice of the case required it. But the progress of adjudication upon the subject has been marked by many strong protests against the wide departure from principle, and the regrets expressed by courts that it had ever obtained. And the current of modern authority is in favor of returning to the due observance of the provisions of this law, according to their obvious intent.

But the distinction between fraud in procuring a conveyance, and that which arises only from the refusal to execute a parol trust or agreement, connected with a conveyance obtained without fraud, is not only clear upon principle, but is not without sanction.

In *Whitton vs. Russell*, 1 Atk., 448, a testator was about to alter his will, so as to give one of the legatees fifteen pounds per annum more than he had already given him. It was suggested by the attorney, that if the other legatees would give a bond to pay the amount, it would be sufficient, and one of the others being present, promised that they would do it, and the will was not altered. The bill was filed to enforce the promise, but the chancellor held it to be " against the statute of frauds," and he adds, " neither is there any ground for relief on the head of accident or fraud. Every breach of promise is not a fraud, nor does it appear that the testator was drawn in by this promise not to add the legacy to this codicil." The inference produced by the statement of facts in that case, is that the promise did induce the testator not to alter his will, in which case it would have been a fraud in procuring the will; but assuming it to be otherwise, as stated by the chancellor, it was then the refusal by one having the legal title without fraud, to execute a trust

which the testator had by parol declared, and which the devisee had promised to execute. And this the chancellor held was not a fraud. He could only have meant that it was not such a fraud as could be relieved against, because in morals it was certainly a fraud.

In the case of *Hoge vs. Hoge*, 1 Watts, 163, this very point was decided. The question arose as to the admissibility of parol evidence to show that a devise of lands was in trust, and it was conceded on all hands that it could not be admitted, except on the ground of fraud; and the question then occurred whether the mere refusal to perform the trust, was such a fraud as would justify its admission. Upon this point the court says : " The question has been as to the circumstances which constitute such a fraud as will be made the foundation of a decree. A mere refusal to perform the trust is undoubtedly not enough, else the statute, which requires a will of land to be in writing, would be altogether inoperative and it seems to be requisite that there should appear to have been an agency active or passive, on the part of the devisee, in procuring the devise." And having found as a matter of fact that there was such agency in that case, they granted the relief on the ground of fraud. And all the authorities referred to in the opinion, are cases in which there was some promise on the part of the defendant, by which the property was procured by himself, or by which he prevented a different disposition of it. The same distinction is recognized in *Pinnock vs. Clough*, 16 Verm., 500.

In the cases of *Dean vs. Dean et al.*, 6 Conn., 284 ; *Bandor vs. Snyder*, 5 Barb. S. C. Rep., 63 ; *Lathrop vs. Hoyt*, 7 id., 59, and other similar cases which might be cited, the hardship of enforcing the statute was equally great as in this case, and in some of them the courts expressed their willingness to escape from its application if possible. But there was no suggestion that the mere refusal of the defendants to execute

the parol trusts, was such a fraud as would take the case out of its provisions.

But the strongest support that seems to exist for the opposite view, may perhaps be derived from the cause of decision admitting parol evidence to show that a deed absolute on its face was given as security, and thereby converting it into a mortgage. It is true, there are some cases which have denied its admissibility, for that purpose, as in *Streator vs. Jones*, 11 Murphy, 449, and in *Thompson vs. Patton*, 5 Littel, 74, which also both sustain the position that the fraud which justifies the admissibility of parol evidence, must be such as affects the transfer or disposition of the property. But there is a very long list of cases which have held parol evidence admissible, to thus convert a deed into a mortgage. Some of them however recognize the distinction we have asserted, as in *Thomas vs. McCormick*, 9 Dana, 109. But many others have gone to the extent of saying that though there was no fraud or mistake in procuring or executing the deed, yet that the mere attempt to use the deed as absolute, is such a fraud as justifies the admissibility of parol evidence and the relief upon it. See *McIntyre vs. Humphreys*, 1 Hoff. Ch. Rep., 34, where the vice chancellor says it is " too late" to dispute the general doctrine, and that " the restriction of the rule adopted in some cases, that it must be shown that a defeasance was not made through accident, fraud or mistake, does not prevail" in New York.

The question is discussed to some extent in *Rogan vs. Walker et al.*, 1 Wis. Rep., 527, decided by Justice Smith on stipulation. In that case there was a condition in the deed itself, and a bond was given by the complainant, which alone justifies the decision made; and so the learned judge held. But he then proceeded to show that even if there had been no such written evidence, parol evidence would have been admissible on the ground of fraud, and that the attempt to

use a deed given as security, as absolute, was a sufficient fraud for the purpose. He cites many authorities which undoubtedly sustain the position, but in commenting on the cases heretofore cited from Barbour's Reports, he held them not applicable, because they were cases of " express trusts" sought to be proved by parol, and says: " The court very properly decided that the statute of frauds was an insurmountable barrier." The ground of distinction suggested is, that the equity of redemption arises out of the transactions of the parties, and not out of the parol agreement. This distinction may be material in determining whether the admissibility of parol evidence is to be determined by the statute of frauds, or by the general rule prohibiting such evidence to contradict the written contracts of the parties.

It is conceded that fraud may take a case out of either the statute or the rule. But I suppose it would not be contended that in the absence of fraud there is any thing in the peculiar nature of the equity of redemption that can have that effect. On the contrary, justifying its admission on the ground of fraud, which is the ground upon which it is placed by all these cases, is admitting that the case could not otherwise be taken out of the rule.

The question under consideration therefore was, what was a sufficient fraud for the purpose? And in determining this question, I can see no distinction between an express trust and a parol agreement making a deed a mortgage. If the refusal to abide by the latter is to be held on principle, to be such a fraud as takes the case out of the rule, and justifies parol evidence, I can see no reason why a refusal to execute an express trust, evidenced only by parol, should not be so held. The injustice, the wrong and the fraud are not only as great, but greater in the latter case than in the former. For in the former the party would only get the land for the money he had loaned, while in the latter he would get it for nothing.

And if these cases are to be held correct upon principle, we can see no reason why the refusal by any party to perform a parol agreement, within the statute of frauds, should not be held such a fraud as would take the case out of the statute whenever such refusal would work hardship and injustice upon the opposite party. But we must say that we think these decisions cannot be sustained upon principle, and that, if established by authority too firmly to be shaken, it must be regarded as an invasion upon the statute which cannot justify still further encroachment. And it is perhaps not so settled on authority as to be beyond question.

In *Stevens vs. Cooper*, 1 J. C. R., 425, the question was, whether the effect of a mortgage could be varied by parol evidence, and Chancellor Kent, after referring to the general rule prohibiting such evidence as settled beyond discussion, adds: "Nor does this case come within any exception admitted here to the operation of the rule; for there is no allegation of fraud, mistake or surprise in making or executing the mortgage; and those I believe are the only cases in which parol evidence is admissible in this court against a contract in writing."

It seems impossible upon principle to distinguish this case from that of the admissibility of parol evidence to vary the effect of a deed. And in *Webb vs. Rice*, 6 Hill, 219, it is decided that such evidence is inadmissible in a court of law, and it is intimated that it could not be received in equity except to show fraud or mistake in the execution of the instrument. The dissenting opinions of Justice Bronson in *Webb vs. Rice*, 1 Hill, 606, and *Swart vs. Service*, 21 Wend., 36, show clearly that he confines the fraud, which is to justify the admission of parol evidence, to such as affected the execution of the instrument. And Mr. Justice Cowen, who delivered the opinion of the court in the latter case, rested it entirely on previous decisions in that state, by which they felt bound. But in speaking of these decisions he says: "For

Rasdall's Administrators vs. Rasdall.

one, I was always at a loss to see on what principle the doctrine could be rested either at law or in equity, unless fraud or mistake were shown in obtaining an absolute deed, where it should have been a mortgage." "Short of that the evidence is a direct contradiction of the deed; and I am not aware that it has ever been allowed in any other courts of equity or law."

But we will not pursue this part of the subject further. We do not of course purpose to pass upon the question, whether in the absence of fraud or mistake in its execution, an absolute deed can be converted by parol evidence into a mortgage. That question is not before us, but it is so nearly allied to the one before us, that we could not well determine the latter, without inquiring how it was affected by the decisions to which we have alluded. And as we think the rule they have established does not rest upon principle, however it may be determined upon authority, we do not feel warranted in following the rule which they would by analogy suggest. And we must hold that as the deed was made absolute to the defendant without any mistake, or fraud on his part, his mere refusal to perform the trust, is not such a fraud as will justify the admission of parol evidence, and the enforcement of the trust. The reason is, that the law forbids us to be informed that there was a trust by that kind of evidence. It may and does undoubtedly work hardship in this case, and that we regret; but if parties will, in face of the positive provisions of the statute, risk their interests upon the honor or justice of others, and the security fails them, they have no right to ask courts to violate the law to furnish relief.

The counsel for the complainants contended that if we should be of the opinion that the trust could not be established, then it appearing that the consideration was not paid, they should be entitled to a vendor's lien for the amount expressed in the deed. The case of *Leman vs. Whitley,* 4 Russ,

423, is relied on, and would seem to sustain the position. The bill was filed to establish a trust and obtain a re-conveyance. The court held parol evidence inadmissible, but decreed a vendor's lien for the consideration, under the prayer for general relief. We have felt a strong desire to follow this case, but upon a careful examination of the whole subject, have come to the conclusion that we cannot do so. The bill does not claim a vendor's lien. It proceeds upon an entirely different hypothesis. It alleges, it is true, that the consideration never was paid.; but not for the purpose of recovering it, but because it was never intended or agreed to be paid. There is nothing in the bill to indicate to the defendant that he was to resist a claim for a vendor's lien, and we cannot but see that it would work a surprise upon him to grant such relief upon this bill. *Rathbun vs. Rathbun*, 6 Barb., 98 ; and *Philbrook vs. Delano*, 29 Maine, 410 ; and *Dean vs. Dean*, 6 Conn, 284, all hold that such relief could not be granted on a bill filed to establish the trust, without indicating in any way an intent to proceed for a lien. And we think this the only just rule upon the subject.

We are compelled therefore upon the whole case, to reverse the judgment of the court below, and direct a decree to be entered dismissing the complaint. At the same time we may express the hope that the defendant's conscience, to which his brother has trusted, may not suffer him so far to violate that trust, as to detain their just inheritance from his wife and children.

NOTE.—After the announcement of this decision the appellants moved the court to so far alter the decision in the case, as to allow them to dismiss the bill without prejudice, in the court below. That motion was granted by this court, and the costs of each party was borne by himself.