Wright, J.
The statement of facts is long and complicated, but we extract this: Mrs. Keziah Taylor brought suit to enforce what she claimed was a trust, existing in her favor, in certain land, held in her husband’s name, at his death. She claims that the circumstances under which, the land was bought create this trust.
Many years ago, in 1832, Pirn Taylor, the husband, was-without means. He and his wife wanted to buy some land. The price was $2,000, a sum that Pirn Taylor could not raise. A payment of $500 could secure the bargain, but the husband had neither cash nor credit to this extent. Under these circumstances, husband and wife agreed that she should get the needed sum from her brother, Mahlon> Whittacre, the land to be purchased for her, and, when paid for, the deed to be taken in her name. Pursuant to-this arrangement, plaintiff did get the $500 from her brother,, advising him of the facts; the understanding being that he was to be reimbursed; that the money was to be used as indicated, this being his sole security for repayment. This understanding and agreement about the purchase of the property was the inducement to the brother to advance-the $500, and without it he would not have made the advance.
Thereupon the husband buys the land. One-half of it is sold, the proceeds going to pay for the purchase of the whole. Some lots, carved out of the purchase and some-property of the wife made further payments, and finally, the property being all paid for, the husband has the deed made, not .to the wife, but to himself. The wife claims-that these circumstances raise a trust in her favor as to this land so taken in her husband’s name, which is half of the-whole original purchase. The facts of the alleged trust- *407 rest in parol merely, and it is claimed they can not be thus proved.
After tbe husband had thus got the deed for the property in his own name, he made two mortgages upon it to Simeon Jennings. The first mortgage was taken without knowledge of the alleged trust, and, as against this, the district court finds the wife has no claim. The second mortgage was assigned to one Webb, with notice of the alleged trust, and as to this her rights are held to be paramount.
It is to be determined whether or not, from the facts found, the alleged trust can be raised in law.
The husband was unable to buy the property. He was unable even to raise the first $500. The wife undertakes to do it. She gets it from her brother upon the understanding that it is to purchase laud in her name. Without this understanding, he would not have advanced it at all, and this understanding is all the security he asks or gets for a repayment. Knowing all this, having been instrumental in bringing it about, for the husband to violate the whole agreement from beginning to end, by taking the deed in his own name, is, to say the least, very like a fraud, both upon his wife and upon her brother.
A trust may arise ex maleficio. In Lloyd v. Spilletts, 2 Atk. 148, Lord Hardwicke speaks of resulting trusts as trusts by operatiou of law, and classifies them : First, where an estate is purchased in the name of one person, but the money or consideration is given by another; secondly, where a trust is declared only as to part, and nothing said as to the rest, what remains undisposed of results to the heir at law. He then proceeds to observe : “ I do not know of any other instance besides these two where this court have declared resulting trusts by operation of law, unless in cases of fraud, and where transactions have been carried on mala fide.” These remarks of Hardwicke are cited in Fleming v. Donahoe, 5 Ohio, 255.
In the report of the same case (Barnardiston’s Chy. 888), the lord chancellor says that the two cases of trusts above alluded to are the only two instances that he remembered *408 of trusts that have been allowed to arise by operation of law since the statute of frauds and perjuries, unless where there has been a plain and express fraud. "Where there has been, a fraud in gaining a conveyance from another, that may be a reason for making the grantee in that conveyance to be considered merely as trustee. Trapnall v. Brown, 19 Ark. 89.
A trust of this kind is a mere implication of law, from the fact of the purchase with another’s money, and the fact of fraud in procuring the legal title.
In Browne on Frauds, § 84, it is said : “ Even where the contract to hold in trust is the means of obtaining the legal title, a case which falls under the third class mentioned by Lord Ilardwicke, the trust is not created by the contract, but results or is implied from the fraud.”
Perry on Trusts, § 166, speaks thus : “ There is another large class of trusts, which arise from frauds committed by one party upon another. Thus, if one party procures the legal title to property from another’, by fraud or misrepresentation, or concealment, or if a party makes use of some influential or confidential relation which he holds toward the owner of the legal title, to obtain such legal title from him upon more advantageous terms than he could otherwise have obtained it, equity will convert such party thus obtaining property into a trustee. If a person obtains the legal title to property by such arts, or acts, or circumstances of circumvention, imposition, or fraud, or if he obtains it by virtue of a confidential relation and influence under such circumstances that he ought not, according to the rules of equity and good conscience, as administered in chancery, to hold and enjoy the beneficial interest in the property, courts of equity, in order to administer complete justice between the parties, will raise a trust out of such circumstances or relations; and this trust they will fasten upon the conscience of the offending party, and will convert him into a trustee of the legal title, and order him to hold it, or to execute the trust in such manner as to protect the rights of the defendant party and promote the safety *409 and- interests of society. Such trusts are called constructive ■trusts.” These trusts the author distinguishes from implied or resulting trusts, which arise from the intention of parties, as manifested in contracts made in good faith, while the constructive trust arises from the opposite of good faith.
Washburn e makes the same classification of implied, resulting, and constructive trusts. 2 Wash. 470.
In the case of Morey v. Herrick, 18 Pa. St. 128, it is said: “ It is well settled that if one be induced to confide in the promise of another that he will hold in trust, or that he will purchase for one or both, and is thus led to do what he would otherwise have forborne, or to forbear what he contemplated to do in the acquisition of an estate, whereby ■the promissor becomes the holder of the legal title, an attempted denial of the confidence is such a fraud as will operate to convert the purchaser into a trustee ex maleficio.”
Commenting upon this ease, Tiffany & Bullard on Trusts, 189, say: “ The trust in these cases is raised ex maleficio, and is not so much because of the fraud in the original acquisition of the property as in the subsequent refusal to execute the trust.” The opinion, however, of Browne, in his treatise on frauds, seems to be that the fraud which suffices to lay the foundation of a trust is not simply that fraud which is involved in every deliberate breach of contract. There must have been some agency in bringing about the result, without which a mere refusal to perform the trust is not enough. Browne on Frauds, §' 94. And Perry says that the mere breach of a parol agreement will not create a trust. § 215.
Washburne, in discussing this division of implied, resulting, and constructive trusts, speaks of the first two as arising from the act of parties, while the constructive trust is imposed in invitum upon the person who is held as trustee. 2 Wash, book 2, ch. 3, § 2, p. 470 (4th ed.)
And he further observes (p. 482) that the term construc"tive trusts is sometimes used in a sense broad enough to •embrace such as were properly under the head of implied *410 or resulting trusts; and that, properly speaking, constructive trusts are such, as are raised by equity, in respect to property which has been acquired by fraud, or where, though originally acquired without fraud, it is against equity that it should be held by him who has the legal title.
"Washburne also seems to entertain the same opinion expressed by Perry and Browne, that a mere subsequent refusal to do what had been agreed, is not such a fraud as will create a constructive trust. 2 Wash. 479. And a like view is held in Fickett v. Durham, 109 Mass. 423. “In no case will the grantee be deemed a trustee, if he used no fraud or deceit in getting his title, although he verbally promises to hold the land for the grantor.” Minor v. Mitchell, 30 Ind. 234.
■ It may, however, be remarked, that the federal courts go to the full extent of affording relief, even in the absence of proof of express deceit or fraudulent purpose at the time of taking the deed. Russell v. Southard, 12 How. 139, 148. This is illustrated in numerous cases where a party takes a deed, absolute upon its face, but which is really a mortgage, and endeavors to retain property upon which he has advanced a largely inadequate consideration. Edrington v. Harper, 3 J. J. Marshall, 355; Campbell v. Dearborn, 109 Mass. 130.
. It is strenuously argued by plaintiff in error, that the only fraud here alleged or proved, consisted simply in the -fact that Taylor refused to do as he had promised, and that -there was nothing in the inception of the transaction that would bring him within the rule requiring fraud to be shown in his conduct at that time.
But if a party induces or brings about the circumstances-that put him in a position whereby he is able to perpetrate a fraud, and then does perpetrate it, these circumstances-of wrong will create a trust. In Hoge v. Hoge, 1 Watts, 163, the syllabus gives an idea of the facts. “ If a testator be induced to make a devise, by the promise of the devisee that it should be applied to the benefit of another, a trust *411 is thereby created, which may be established by parol evidence ; and this is not contrary to the statute of wills.”
It appeared that John Hoge, the devisee, “ suggested ” to-the testator to devise the property to him, it being intended for the testator’s son, William Hoge. Nothing was said in the will about any trust, but it was sought to be established by parol. Gibson, C. J., says (p. 214): “Undoubtedly every part of a will must be in writing; and a naked parol declaration of trust, in respeqt of land devised, is void.. The trust insisted on here, however, owes its validity, not to the will or the declaration of the testator, but to the-fraud of the devisee. It belongs to a class in which the trust arises ex maleficio, and in which equity turns the fraudulent procurer of the title into a trustee, to get at him; and there is nothing in reason or authority to forbid the-raising of such a trust from the surreptitious procurement of a devisee.” It is further said, in the same case : “ The question has been, as to the eircumstauces which constitute-such a fraud, as will be made the foundation of a decree. A mere refusal to perform the trust is undoubtedly not enough ; and it seems to he requisite that there should appear to have been an agency, active or passive, on the part of the devisee, in procuring the devise.”
In Devenish v. Baines, Pre. in Chy. (Finch), case 3, a testator intended to will the greater pai’t of his estate to-his godson, and the rest to his wife. The wife persuaded him to give the whole to her, and that she would give the-godson the part designed for him.
The wife refused to let the godson enjoy the estates intended for him, but it was decreed against her on the ground of fraud, saying that a trust of such parol estate might be raised without writing, notwithstanding the statute of frauds.
In Flynn v. Flynn, a man made his will with his wife as-executrix. The son afterward prevails on his mother to-get the father to make a new will, and to name him executor, he promising to be a trustee only for his mother. “ Upon the whole matter,” says the report, “ it appearing *412 to be as well a fraud as a trust, the Lord Keeper, notwithstanding the statute of frauds and perjuries, though no trust was declared in writing, decreed for plaintiff.”
In Sechrist’s appeal, 66 Penn. St. 237, the fifth syllabus is: •“ Where one procures a title which he could not have obtained, except by a confidence reposed in him and abuses the confidence, he becomes a trustee ex maleficio. Beegle v. Wentz, 55 Penn. St. 369.
In Squires’ appeal, 70 [Penn. St. 266, Mrs. Squires, by parol, purchased property. Her agent, Ridgway, who owed her $5,000 was to turn this amount in as the purchase-money, and receive a deed in trust for her. He took an .absolute deed to himself and then denied the trust. He was held a trustee ex maleficio. Woolford v. Herrington, 74 Penn. St. 311; S. C., overruling former, 4 South. Law Rev., 327, June, 1878.
In Rasdall’s Adm’rs v. Rasdall, 9 Wis. 379, the fraud ■consisted merely in a refusal to execute a trust, and this was held not such fraud as would justify the admission of parol evidence of the agreement. And in this case the distinction between fraud in procuring the conveyance and that which arises only from the refusal to execute a parol trust or agreement, connected with a conveyance obtained without fraud, is said to be not only clear upon principle, but is not without'sanction. The ground of the decision is that the conveyance in question was “ without any solicitation or instigation of the defendant.”
It can not be said that Pirn Taylor’s refusal to fulfill his promise is the only ground on which to base the alleged trust. He appears to have been a participant, at least, in bringing about the whole arrangement. He agreed with his wife that the purchase should be made. He agreed with her that she should solicit the loan from her brother. He agreed to take the deed in her name. Unless he had agreed and consented to all this, the loan or advance would not have been made. Certainly, therefore, he induced the result, as the devisee induced the devise which he endeavored to hold as his own. Taylor, therefore, becomes a *413 tr.ustee by virtue of Ms own wrongful acts. . He took in confidence what he could not retain, without bad faith and fraud.
Courts of equity raising a trust by construction in eases of this kind, can do equal and complete justice between parties, though in so doing the relief is founded more upon fraud than upon the idea of trust as generally understood. "When it is said that a person who has defrauded another out of his estate, by misrepresentation or other deceptive practices, is converted by the court into a trustee, and held as such, the expression is used for the purpose of describing-the nature and extent of the remedy against him, and it denotes that the parties defrauded, or beneficially entitled,, have the same rights and remedies against him, as they would be entitled to against an express trustee who had fraudulently been faithless. And though perhaps the matter in question is not, strictly speaking, a trust at all, but a ground of relief based on fraud, courts are agreed in administering the same remedy in a certain class of frauds, as an administration in fraudulent breaches of trust, and the mere name of the thing is not of so much consequence as the achieving the right remedy in the premises. And this arises, says Washburne, from the control which courts of chancery exercise over equitable estates, whereby in cases of fraud, mistake, or the like, they may require a grantee to hold subject to a trust in the nature of a resulting trust. 2 Wash. R. P., book 2, chap. 3, § 2, p. 482 (4 ed.)
In the case of Jenkins v. Eldridge, which was a case where a trust was sought to be raised, Judge Story says that it is a trust of a somewhat novel and extraordinary character, seeming to contain the elements of resulting trust, agency, fraud, and specific performance, and between them all, he seems to find a solid basis on which to rest the decision. This case does not seem to be highly regarded in 1 W. & G. Leading Cases in Eq. 358, 361 (Am. notes).
The principle of agency may be applied to Pim Taylor. Says Perry on Trusts (§ 206), speaking of the duties of am agent, he may be held as a trustee, if he makes use of' *414 his position in any way to obtain a title to himself. “ If he takes a conveyance in his own name, he is a trustee ex maleficio.”
Pim Taylor, when he received this $600, was certainly acting for somebody. It will not do to say that as soon as the wife obtained the loan, and handed it over to him, from that moment it became his personal property, by virtue of his marital rights. Moulter v. Haley, 57 N. H. 184; Hick’s Ex’rs v. Skinner, 71 N. C. 539.
Whether the husband has reduced the wife’s chattels to possession, so as to make them his own, is a question as to the intention of the parties. Houston v. Clark, 50 N. H. 479; Hall v Young, 37 N. H. 134.
Marital rights are not so overshadowing in their extent, nor so indiscriminate in their exercise. The money was advanced by the brother for certain specific purposes. One ■of those purposes was that the husband should not have it, nor any part of it, nor any interest therein. Another was that it should all go for the benefit of the wife, with an ultimate view to security to the lender. Pirn Taylor, therefore, had no right to it in any way, except to do with it as he was directed. When he violates his duties, as he did, he •can not disrobe himself of his character as agent, and the consequences of that character must attach to all his proceedings.
We think that a fair construction of the finding shows that the money was advanced so as to be the money of the wife. This was the object of the brother, in order that the land bought with it might be hers. Because both husband- and wife desired the purchase of the lands, and the loan, •does not tend to show, as seems to be claimed, that the loan was to both. The reverse is true ; the advance was “ to her.” Nor does the fact that'fhe money was to be repaid, or that the brother looked for his security to the agreement, as to the purchase tend to show that the money was not hers. The loan was just as much hers as if it was a gift.
And we think the finding sufficiently shows that the *415 $500 went into'the purchase. The residue of the purchase-money is accounted for, and the full amount, which the decree shows was paid, can not be made up without this sum.
That a trust arising by operation of law may be proved by parol evidence, see Williams v. Van Tuyl, 2 Ohio St. 337; Byers v. Wackman, 16 Ohio St. 450.
We do not think that lapse of time should bar Mrs. Taylor from asserting her rights. She did so shortly after her husband’s death. She wás not bound to do so before, at the risk of creating trouble in her family.
With regard to the cross-petitions in error, the judgments, as to the parties, will be reversed, but the right is not of that joint character that requires reversal as to all. If a party obtains a reversal as to himself, it can not advantage him that there- should be a reversal as to somebody else.
Judgment affirmed as to all except those who were not properly made parties, who have filed cross-petitions in error on that ground.
Day, J., dissented.